M. J. BARTEE *et al. v.* ABSALOM THOMPSON, Ex'r.

1. WILLS. *Capacity of testator. Evidence. Proof.* In the examination of the attesting witnesses in the first instance as to the formal execution of the will, there being no circumstances of suspicion surrounding it, it is not necessary to interrogate them as to the sanity of testator.

Cases cited: Puryear *v.* Reese, 6 Col., 24, and cases there cited.

2. SAME. *Same. Same.* While in an issue of *devisavit vel non,* the *onus probandi* is on the party seeking to establish the will, yet the burden of proving unsoundness or imbecility of mind in the testator is upon the party impeaching the validity of the will for this cause.

Cases cited: Barnes *v.* Smith, 3 Hum., 283; Puryear *v.* Reese, 6 Col., 24; Cox *v.* Cox, 4 Sneed, 86.

3. SAME. *Same. Same.* In ordinary cases, the fact of execution of the will being proved, the knowledge by the testator of its contents will be

presumed. But where the testator is blind or illiterate, no such presumption arises. In such cases more is required than proof of formal execution. In such cases there must be proof not only of the formal execution of the will, but likewise of the testator's knowledge of its contents.

Cases cited: Cox v. Cox, 4 Sneed, 86; Watterson v. Henry Watterson, 1 Head, 1.

4. SAME. *Same. Same.* The fact that a will is executed by a testator by making his mark is *prima facie* evidence of his inability to write, or to read writing, and in such a case there ought to be evidence by the attesting witnesses in explanation of the manner of signing, or evidence of the knowledge of the contents of the will, to make the formal execution complete, or to entitle the plaintiffs to a verdict, if no counter proof is offered.

---

## FROM MAURY.

---

Appeal from the Circuit Court. MARTIN, Judge.

J. M. GAUT for plaintiff.

No counsel marked for defendant.

DEADERICK, J., delivered the opinion of the Court.

This is an appeal in error from the judgment of the Circuit Court of Maury county, upon the verdict of a jury establishing the will and codicils thereto of Mrs. Michael Thompson, deceased. A great deal of evidence is found in the record *pro* and *con* as to the sanity of the testatrix at the time of the execution of the several papers in controversy in this case. Several exceptions are taken to the charge of the court by the contestants.

The court charged the jury that "the will must

be proved by at least two attesting witnesses, who must testify that they signed the same at the request of the testatrix, and in her presence, and that she signed the same, or declared it to be her last will." This must be proved by all the subscribing witnesses, if living, "and within the jurisdiction of the court," and when so proven the law presumes the testatrix was of sound mind, "and knew the contents of the will," and this rule applies to the several codicils.

The court further instructed the jury, "If the plaintiff has done this he may rest his case, and the burden of proof is cast upon the defendants to show by facts and circumstances that it is not the last will and testament of Mrs. Thompson. If the plaintiff has failed to show by proof the execution of the will, you need proceed no further, and should find against it. If, however, the will has been proven according to the rules mentioned, then I say you should find it is the last will of Mrs. Thompson, unless the defendants show by preponderance of proof it is not her will, for as I have said, in that event the burden of proof is thrown upon the defendants to show it is not her last will."

The error assigned upon this part of the charge is, that the court should have instructed the jury that the plaintiff should have been required, in addition to and as part of the proof of the formal execution of the will and codicils, to have introduced evidence of the mental capacity of the testatrix. There are cases sustaining the view insisted on, and plausible reasons in its favor. The competency of the testator at the

time the will is signed is essential to its validity, and the party propounding the will must show that the will has been properly executed. But the law presumes that every man is sane until the contrary is shown. 1 Gr. Ev., 42; 2 *Ibid*, 689. And this presumption will stand until some evidence is introduced to remove it. If a presumption may be removed, and must be by evidence adduced by the party alleging insanity. We are of opinion, therefore, that in the examination of the attesting witnesses, in the first instance, as to the formal execution of the will (there being no circumstances of suspicion surrounding it), it is not necessary to interrogate them as to the sanity of the testator. 6 Col., 24, and cases there cited. The law presuming that every man is sane until the contrary is shown, the burden of proving the unsoundness of mind in the testator is on the party impeaching the will for this cause. There are numerous authorities to this effect. 2 Gr. Ev., 689; 1 Red. on Wills, 31; 3 Hum., 283.

The authorities are quite as numerous and uniform that in an issue of *devisavit vel non* the *onus probandi* is on the party seeking to establish the will. 1 Red. on Wills, ch. 3, p. 30; 1 Gr. Ev., sec. 77; 2 Gr. Ev., sec. 689; 6 Col., 24; 4 Sneed, 87.

And the fact that the burden of making out the insanity of testator is upon the defendant when he alleges it, does not change the rule that holds the plaintiff bound to make out his cause. In 2 Gr. Ev., sec. 689, it is said, "in regard to insanity or want of soundness of mind, we have heretofore seen that

though in the probate of a will, as the real question is whether there is a valid will or not, the executor is considered as holding the affirmative, and therefore may seem bound, affirmatively, to prove the sanity of the testator; yet we have also seen that the law itself presumes every man to be of sane mind until the contrary is shown. The burden of proving unsoundness or imbecility of mind in the testator is therefore on the party impeaching the validity of the will for this cause."

The defendants below contested the validity of the will, not only on the ground of incapacity of testatrix, but upon the ground of fraud and undue influence. But in the view we have taken of the case, it is not necessary to discuss the conflict in the books and reported cases upon the questions of the necessity of proof of capacity in the testator in the first instance; and as to the burden of proof on the point of insanity or unsoundness of mind. Much might be said on either side upon both of these questions, but we are content to follow the decisions heretofore made by this court, as hereinbefore indicated.

In this case the testatrix did not sign her name to the will or codicils, but her name was written by another, and she made her mark to each of said papers.

The court, as before stated, charged the jury that the statute requires a will to be proved by at least two attesting witnesses, who must testify that they signed the same at the request and in the presence of the testatrix, and that she signed it, or declared

it to be her last will. This being done, the burden of proof is cast upon defendants to show that it is not the will of Mrs. Thompson.

This charge is correct where the testator is able to read and write, and no facts appear to awaken suspicion. But where a testator is unable to read writing or to write, there must be other evidence of knowledge of the contents of the will than the mere fact of its formal execution, before the proponents would be entitled to a verdict establishing it. In ordinary cases, the fact of execution of the will being proved, the knowledge by the testator of its contents will be presumed; but where the testator is blind or illiterate, no such presumption arises. In such cases more is required than proof of formal execution. In such cases there must be proof not only of the formal execution of the will, but likewise of the testator's knowledge of its contents. *Cox* v. *Cox,* 4 Sneed, 86; 1 Head, 1.

The fact that a will is executed by a testator by making his mark, is *prima facie* evidence of his inability to write or to read writing, and in such a case there ought to be evidence by the attesting witnesses in explanation of the manner of signing, or evidence of the knowledge of the contents of the will, to make the formal execution complete, or to entitle the plaintiffs to a verdict, if no counter proof is offered.

The charge of his honor excludes the idea of such necessity in this case, and was therefore erroneous in holding in effect that the burden of proving that the

33—VOL. 8.

papers propounded were not the will of Mrs. Thompson, was cast upon the contestants in the absence of presumption or proof that she had knowledge of the contents of the will upon the proof of its formal execution.

Let the judgment be reversed and a new trial awarded.