JOHN ATKINS v. S. W. WITHERS and wife.

*Fraud and Undue Influence—Confidential Relations.*

1. There is a clear distinction between transactions between persons standing in fiduciary relations to each other, and those between persons bearing no such relation. In the first case, the law presumes fraud, and the burden is on the party denying it to rebut it. In the other case, he who alleges fraud must prove it.

2. The presumption of fraud in dealings between persons standing in fiduciary relations arises, not because the Court can see that there is, but because there may be fraud.

3. The fiduciary relations from which the law presumes fraud are, executors and administrators, guardian and ward, trustee and *cestui que trust*, principal and agent, mortgagor and mortgagee, brokers, factors, &c., attorney and client, and husband and wife.

4. The relations subsisting between parties who have agreed to marry are not such as to raise a presumption of fraud in dealings between them.

CIVIL ACTION, tried before *Avery, Judge,* and a jury, at Spring Term, 1885, of the Superior Court of HARNETT county.

This action was upon a bond for payment of a sum of money, made by the *feme* defendant, then Virginia McNeill, since married to S. W. Withers, of the following tenor:

$259.77.

One day after date, I promise to pay Dr. J. W. Atkins, or order, two hundred and fifty-nine $\frac{77}{100}$ dollars, for value received for the purchase money for a tract of land, known as the West land, for a full description, see deed made from said Atkins to me, the above amount to bear interest from date of deed, 23d February, 1876.

This the 22d February, 1878.

(Signed) VIRGINIA MCNEILL, [Seal].

Witness: H. C. MCNEILL.

The execution of the bond was not denied—the defence relied on was, that the execution was procured through fraud and undue influence exercised by plaintiff over the *feme* defendant.

Issues were framed and passed upon by the jury, which, with the responses thereto, were as follows:

1st. Is the land described in the bond sued on as the "West land," the same as the land described in the deed executed by John West to Neill McNeill on the 8th day of August, 1828?

Answer—Yes.

2d. Was the execution of the bond sued on procured by fraud or undue influence on the part of the plaintiff?

Answer—No.

After reading the bond in evidence, with the credit endorsed of $20.24 on 9th of June, 1880, the plaintiff next read in evidence, for the purpose of establishing the consideration, a deed from himself to the *feme* defendant, then Virginia McNeill, for 148 acres of land in Harnett county, dated 23d February, 1876, the consideration expressed being $259.77. And for the purpose of identification of the land as the "West land," he read in evidence a deed for 148 acres of land in Harnett county (then Cumberland), dated 8th August, 1828, made by John West to Neill McNeill, the father of A. S. McNeill, also a deed from A. S. McNeill, father of *feme* defendant Virginia, to plaintiff Dr. J. W. Atkins, dated 10th February, 1876, for this same land, the wife of A. S. McNeill joining in the conveyance—all proved and registered.

It was in evidence, that this land fell to A. S. McNeill in the division of his deceased father's estate, that it was known as the "West land," and was in his possession when he and his wife made the deed to plaintiff, and was then worth $450.

The plaintiff also read in evidence two judgments in his favor, in a justice's court, against A. S. McNeill, and docketed in the Superior Court of Harnett, as follows:

(1.) One judgment for $88.77, with interest from 1st February, 1876.

(2.) One judgment for $171.00, with interest from 1st February, 1876.

Aggregating $259.77.

To such judgment was appended a memorandum on the Docket, "Satisfied by deed to West land."

(Signed)         J. W. ATKINS.

Mrs. M. V. McNeill testified: That she was the widow and administratrix of A. S. McNeill, who died in Septembr, 1876, and that she found this original bond among his valuable papers after his death. That Dr. Atkins inquired if she had found such a note, and asked to see it. That she got it, and handed it to him, and he put it in his pocket. She inquired of him what he intended to with it. He said he would arrange the note, so as it would give her no further trouble. That she looked upon plaintiff as her very best friend. That he advised her husband about his business during his last illness, and advised her about her business after her husband's death, and about her business as administratrix. That she got the note back from Dr. Atkins again afterwards. Did not remember at what time. Witness had seen the note sued on before. Made the payment credited on the note. Defendant Virginia did not direct her to make the payment.

Mrs. Virginia Withers testified: That she is one of the defendants. Was Virginia McNeill. That she and her father, A. S. McNeill, signed the note read in evidence by defendant. That she did so under his instructions, in February, 1876, and had not seen it again until to-day. That she also signed the note in suit. Her brother, H. C. McNeill, brought it to her in Johnston county. That she got the deed from Dr. Atkins to herself when she signed the original note, and received no consideration for giving the second note.

H. C. McNeill testified: That he had seen the note in suit before. That he received it from plaintiff, unsigned, upon occasion of a visit to Johnson county, where his sister was keeping school. Dr. Atkins told him to take it down to her, and get her

to sign it, and it would relieve my father's estate from the note he had signed. I did so, and returned the note to him, signed by her. Dr. Atkins stated that in consequence of some debt father owed him, that father had made him a deed. Also, that he never expected to push Virginia for the note. That father's estate was threatened with a great many suits. That she had better make a new note, making the land responsible, and leave his name off, and he, Dr. Atkins, would hold the land for her benefit. The plaintiff looked upon us as almost one of the family—and was so regarded by the family—was second cousin on both sides, and our family physician, and a suitor of Virginia.

Mrs. Virginia Withers, recalled by the defendant, testified: That she signed the note in suit, because her brother, H. C. Mc-Neill, told her if she signed it, it would relieve her father's estate from liability on a note signed by him: Witness was not then married. Was born in Aagust, 1856. Was of age when she signed the last note, but was not of age when she signed the first note. Was on kind terms with plaintiff—their relations were of the most pleasant and confidential kind. She thought he was undertaking as a friend to secure the land for her.

On cross examination, the witness testified:

"I own the land and rent it out, it has been in the family a long time. Dr. Atkins never took possession. I took possession at my father's death, in September, 1876. I have never paid any money for this land. The deed to me was made in February, 1876. I did not ask my mother to make the payment on the note in suit. I did not pay the taxes on the land until the last few years. The plaintiff never mentioned the note to me but once. My mother had written to me that she had made the payment. The plaintiff wrote afterwards, and I replied that I had heard of the payment, and have promised to pay. I thought then that I owed the money—I know I had signed the note—I had heard that the plaintiff was insisting that the land was bound for the note, and therefore I agreed to pay.

Exception 1st. The plaintiff then offered himself as a witness in his own behalf, and proposed to show by his own testimony, what occurred between A. S. McNeill, father of the *feme* defendant Virginia, and dead at the time of the trial, and the witness, in reference to tne original bond, read in evidence by the defendants.    To the proposed evidence the defendants objected, as incompetent under §590 of The Code.

The plaintiff urged its reception on the ground that the defendant, Virginia, had been allowed to testify, without objection, as to what her father said, when she signed the original bond with him at his request, and had thus opened the door to plaintiff's evidence, if otherwise incompetent by reason of death of A. S. McNeill, under section 590 of The Code; that said section was not applicable, inasmuch as the estate of A. S. McNeill was not concerned in this litigation, the defendant not claiming under him as heir, devisee, administrator or assignee. Besides, fraud was imputed to the plaintiff, and he was entitled to make explanations, and also, because Mrs. McNeill, the administratrix, had been examined and testified, as before stated, for defendants.

Objection of defendants was overruled by the Court, and the defendants excepted.

The plaintiff then testified: A. S. McNeill was in debt to me for borrowed money and medical attention.    He told me that he wanted to pay off his debts.    That he owed witness and had no money to pay him.    Wanted to pay him in land.    I said I did not want any land.    He told me to take judgment against him in Justice's Court.    A few days afterwsrds, witness obtained judgments and had them docketed in Superior Court.    Afterwards, A. S. McNeill told witness that he would give him a conveyance to the "West land" to satisfy these judgments. Witness agreed to take the land, but told McNeill that the land was worth more perhaps than the debt, but that he did not want it.    McNeill executed a deed to witness, (the deed read in evidence by the plaintiff), and witness entered "satisfaction" of the

judgments on record, being the same read in evidence by the plaintiff. Witness told McNeill's daughter, Virginia, the defendant, that the land might be a home for her. She was then living with her father. He had previously told McNeill that any of his children might have it. She said she would see her father. They gave witness a bond. Witness had told her if she would give a bond, he would not ask for the money till she was married. Witness declined to take the bond in the form it was given, remarking that he wanted it to express on its face, that it was given for this land, otherwise he would be in the same condition as before. I never gave up any debt. I got the original note or bond from Mrs. M. V. McNeill, and returned it by her son. A. S. McNeill was in straightened circumstances, and I was willing to release docketed judgments for simple note of hand. The note in suit has never been paid, the only money received is credited. I never heard of any allegation of fraud until this suit. There has never been any offer to return to me the land. I never told H. C. McNeill that I never intended to collect this note.

There was evidence offered by the defendant tending to prove that the land was worth considerably more than the amount of the bond ; that A. S. McNeill was, at the time of the transaction, in straightened circumstances; that the plaintiff was doubly related to the defendant Virginia, and was engaged to be married to her at the time of signing the bond ; that the plaintiff was the medical attendant upon A. S. McNeill during his last illness, which was protracted, and covered the time of the transaction ; was his intimate friend and companion, and was the confidential friend and adviser of himself and family ; that the defendant Virginia had been in possession of the land, without interruption, since her father's death, and that the plaintiff had never been in possession.

The defendant asked his Honor for the following special instructions :

1st. That if the jury shall believe that the plaintiff was the confidential friend and adviser of the family, including the *feme* defendant, that then any advantage taken of the defendant in any business transaction between the plaintiff and defendant, would constitute fraud.

2nd. That if the relationship of confidential friend and adviser is established to the satisfaction of the jury, then the burden of proof is on the plaintiff to show that the transactions are fair, and that no advantage was taken of the *feme* defendant.

3rd. That if the note sued on was obtained by the representation on the part of the plaintiff, that the same was for the benefit of the *feme* defendant, and the same was not true, then the transaction would be fraudulent.

These instructions his Honor declined to give. Defendants excepted.

On the issue of fraud, the Court charged the jury as follows:

The execution of the note sued on is admitted, and nothing more appearing, the plaintiff would be entitled to recover.

The defendants allege, however, that the execution of the note under seal, or bond sued on, was procured by fraud, or undue influence, on the part of the plaintiff. The burden is upon the defendants to show, to the satisfaction of the jury, that the execution of the bond was so procured.

If the bond executed by A. S. McNeill and Virginia McNeill, was found among the papers of A. S. McNeill after his death, the fact that it was in his possession, would have raised a presumption that it was satisfied, but such presumption could be rebutted by evidence showing that it was not in fact paid or released.

If A. S. McNeill had paid and discharged said bond, or if the plaintiff had surrendered said bond to him, and agreed with him to release the obligors from payment, and the defendant Virginia, by reason of her confidence in the plaintiff as her general adviser, or affianced lover, was induced by false representations made by plaintiff, (in person or through his agent), to believe

that by executing the bond sued on, she would relieve her father's estate from embarrassment, then the jury would respond to the second issue in the affirmative.

The fact that the plaintiff was the confidential friend of defendant Virginia, or sometimes her adviser, or that there was an engagement to marry subsisting between them, were circumstances that the jury might consider in determining whether the execution of the bond sued on was procured by undue influence or fraud.

Unless plaintiff has been shown to be her general agent, the law would not presume that there was fraud or undue influence.

If the original bond was not satisfied by payment or surrender, but entrusted to A. S. McNeill, with an understanding that it was still due, and the bond sued on was given in lieu of it, the jury would respond to the second issue in the negative.

Defendants excepted.

There was a verdict for the plaintiff upon both issues. A rule for a new trial was asked for on following grounds :

1st. Because his Honor allowed the plaintiff to testify, after objection, to transactions and communications between himself and A. S. McNeill.

2nd. Because his Honor refused the special instructions asked for defendants.

3rd. Because his Honor failed to charge the jury that the original bond, having been signed when the defendant Virginia was under age, was voidable, and the defendant was not bound on the same after she attained her majority ; that the possession of the land not having been changed, the price for the same being grossly inadequte, the near relationship of the parties, were each and all badges of fraud.

4th. Because his Honor's charge was too general in terms, and did not direct the jury with sufficient particularity as to the facts of the case.

There is a judgment on the verdict in favor of the plaintiff, from which the defendant appealed.

*Mr. J. H. Flemming,* for the plaintiff.
*Mr. Geo. V. Strong,* for the defendants.

ASHE, J. (after stating the facts). The defendant having
abandoned his first exception, which was assigned as a ground
for a new trial, we will consider the other grounds assigned in
the order in which they were taken.

The first in order was, that His Honor refused the instructions
asked, the first and second of which were, that if the jury should
believe that the plaintiff was the confidential friend and adviser
of the family, including the *feme* defendant, that any advantage
taken of the defendant in any business transaction between the
plaintiff and defendant, would constitute fraud; and secondly,
if any such confidential relationship should be established, the
burden of showing that the transaction was fair, and no advan-
tage was taken, is on the plaintiff.

His Honor properly refused to give the instructions as
prayed. He instructed the jury, that the execution of the note
sued on being admitted, and the defence relied upon being fraud
and undue influence, exercised in procuring its execution, the
burden was upon the defendant to show to the satisfaction of the
jury, that its execution was so procured. The proposition con-
tained in the instructions asked by the defendants was, that if
such a relationship as that alleged should be proved to have
existed, and any undue influence was used by the plaintiff to
obtain it, then the bond was void in law, but his Honor denies
the proposition, and charged that it was a question for the jury
to determine and the *onus* was on the defendant.

There is a well marked distinction in transactions between
persons standing in fiduciary relations to each other, and those
between persons who do not bear such relations. In the one
case, the law presumes the fraud, and the Court pronounces the
transaction void, as a legal question, unless the presumption is
rebutted, and in that case the *onus* is upon him who alleges the
fraud of the transaction. In the other case, it is a question of

fact for the jury, and the *onus* is upon him who alleges the fraud or undue influence. This distinction is clearly recognized in the case of *Huguenin* v. *Basely*, 2 White and Tudor L. cases Eq., 406 and notes.

The cases in which the law will presume fraud, arising from the confidential relations of the parties to a contract, are, executors and administrators, guardian and ward, trustees and *cestui que trust*, principal and agent, brokers, factors, &c., mortgagor and mortgagee, attorneys and clients, and to those have been added, we think very appropriately, husband and wife. The rule is founded on the special facilities which, in such relation, the party in the superior position has of committing a fraud upon him in the inferior situation, and the law looking to the frailty of human nature, requires the party in the superior situation, to show thas his action has been fair, honest and honorable, not so much because he has committed a fraud, but that he may have done so. Bigelow on Frauds, ch. 5; Baily on Onus Probandi, 324. The class of cases here mentioned are the only cases in which the Courts have assumed to declare void, a contract arising out of the confidential relations of the parties.

But the learned counsel for the defendant insists, that there should be added to these classes, the relation subsisting between a lover and his affianced, and has permitted his wonted zeal, in behalf of his client, to lead him to the unchivalrous conclusion that, in that relation, the man holds the superior position, and the affianced is so much under his influence, that the law looks with suspicion upon any contract made between them, and will throw the burden of showing its fairness upon him. We know of no such prtnciple of law, and the counsel has failed to furnish us with any authority to support his position. Fraud in such a contract, like all others not falling within one of the above-mentioned clauses, where undue influence is alleged, presents a question of fact for the jury, and the *onus* is on the plaintiff. It is not in the province of the Court to pronounce it fraudulent, as insisted by the defendant,

in the second and third instructions asked. There was, there-
fore, no error in the Court's refusing to give the instructions, and
submitting the question of undue influence to the jury.

The defendant offered some evidence tending to show the exer-
cise of undue influence on the part of the plaintiff, growing out
of his being the friend and adviser of the family, and the deli-
cate relations in which he stood to the *feme* defendant, but the
plaintiff, on the other hand, offered his own testimony, which, if
believed, the transaction was shown to be fair and honorable, and
the jury gave credence to his testimony, and rendered a verdict
in his behalf. That was conclusive upon that point.

The third instruction asked, was, that if the note sued on was
obtained by the plaintiff upon false representation to the defend-
ant, that the same was for *her benefit*, it was void.

Upon the facts of the case, his Honor could not have given
this instruction, for it was a transaction which has certainly
enured to her benefit. The deed for the land, which is the con-
sideration of the bond, was executed by the plaintiff to the *feme*
defendant, on the 23d of February, 1876, and she has had the
possession of it ever since, without paying anything for it, except
a small sum paid by her mother, and the land, which was worth
at the time of the conveyance $450, was sold to her for the sum
of $259.77, being the amount of the debt due originally from
her father to the plaintiff. The defendants keep the land, worth
twice the amount of the sum agreed to be paid for it, and, with-
out offering to return it to the plaintiff, endeavour to escape the
payment of its price, by charging the plaintiff with falsely rep-
resenting that the transaction was for the *feme* defendant's bene-
fit. The exception was not worthy of consideration.

The third ground assigned for a new trial, was, that the *feme*
defendant was under age when she gave the first bond, and she
was not bound on the same when she attained her majority, and
the fact that the possession of the land was not changed, the
price inadequate, and the relationship of the parties, were each
and all badges of fraud. There is not the shadow of merit in
this exception, and the counsel here did not press it.

The contract made in defendant's infancy was ratified by her giving a new bond and keeping the land after she became of age, and it is the first time we have heard the position seriously urged in a court of justice, that a bargainee could set up the inadequacy of the price paid by her for land as a badge of fraud.

There is no error. The judgment of the Superior Court is affirmed.

No error.　　　　　　　　　　　　　　　　　　　Affirmed.