MYRON A. HALLE, Executor, etc. *v.* JOHN SUMMER-
FIELD *et al.*

(*Jackson,* April Term, 1955.)

Opinion filed February 3, 1956.

446

Ewing, Laughlin & Watson, Larry Creson and Myron A. Halle, Jr., all of Memphis, for petitioner.

Davis & Davis, of Memphis, for respondents.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a will contest involving the validity of three wills executed by Phil M. Halle, who died in Memphis, Shelby County, Tennessee, on March 20, 1953. He was eighty-five (85) years of age at the time the last or third will was executed, and which will be later referred to as the revoking will.

For a number of years, and up to the time of his death, the testator and his son, Myron A. Halle, were jointly interested in a valuable ladies' ready-to-wear business in the City of Memphis known as "Halle-on-Main". They were equal partners in the business. Young Halle was taken in as a partner soon after he graduated from High School, and was taught all he knew about the business by his father.

The testator, Phil M. Halle, was the father of Myron A. Halle and Emily Summerfield, the latter having married one Joe Summerfield. Emily Summerfield predeceased her father and left surviving two children, John Summerfield and Phyllis Summerfield Brock.

The first will of Phil M. Halle, and which was duly executed, was dated April 26, 1940. In this will Myron A. Halle was named Executor without bond. It was witnessed by W. B. Rosenfield and Max J. Borod.

The second will which is involved in this case was executed on April 26, 1947, and witnessed by C. Rudolph Johnson and Mrs. Margaret Ware. He named his son, Myron, and his daughter, Emily, as "joint Executor and Executrix" of this will. It was written upon yellow tablet paper in long hand by the draftsman, C. Rudolph Johnson.

Each of the above documents have complete attesting clauses, the latter, or second will, having an additional attesting clause as to the mental state of the testator.

The third will was executed on the afternoon of April 26, 1947, and witnessed by L. W. Holthofer and Aileen Shea. It shows the hour of execution as 2:00 o'clock p. m. and purports to revoke the will executed on the morning of the same day and to declare and republish the first will as and for the last will of Phil M. Halle. It has no

attesting clause. But the proof conclusively shows that it was executed in full compliance with the statute.

We will refer to the three documents as the "First Will", or the "1940 Will"; the Second Will as the "Johnson Will"; and the Third Will as the "Revoking Will".

These documents were duly transferred from the Probate Court of Shelby County to the Circuit Court for trial upon issues made up under the direction of the court.

The proponent, Myron A. Halle, Executor of the First Will, averred it to be the last will and testament of Phil M. Halle, deceased. Thereupon the contestants, John Summerfield and Phyllis Summerfield Brock, entered a formal denial and offered the Second Will (the Johnson Will) as the last will of the said testator.

The Third, or Revoking Will, was offered for probate by Myron A. Halle. It disposed of nothing; it purported to revoke all prior wills, including the Johnson Will, and republish the Will of 1940.

At the conclusion of all the evidence counsel for Myron A. Halle moved the court for a directed verdict in favor of the 1940 Will and also in favor of the Revoking Will. The counsel for the contestants at the same time moved the court to direct a verdict in favor of the Second or Johnson Will. Both motions were overruled and the issues tried to a jury who returned a verdict *in favor of the First Will and Revoking Will*. The trial judge approved the verdict and entered judgment accordingly.

A motion for a new trial, based upon numerous alleged errors was made and overruled. An appeal was prayed and granted to the Court of Appeals. There were twenty assignments of error argued, all being overruled except one. The case was reversed and remanded for a new trial for alleged error by the trial judge in charging the

jury as to which of the parties was onerated with the burden of proof. The trial judge had charged the jury that the burden rested upon the contestants to show that the Revoking Will was the result of undue influence exerted by Myron A. Halle. The Court of Appeals reversed, holding that the burden was upon Myron A. Halle to show that the said Revoking Will was free from the taint of suspicion. In other words he had exerted no such undue influence, and that it was the free and voluntary act of the testator.

We granted certiorari and the issues have been fully and ably argued by counsel for the respective parties.

The petitioner assigns as error the following: (1) The trial judge erred in refusing to direct a verdict in favor of the will of April 26, 1940, and also the Revoking Will of 1947, because the wills were executed as required by law, and there is no evidence that the aforesaid Revoking Will was not the free and voluntary act of the testator. (2) The Court of Appeals committed error in reversing and remanding the case on the ground that the trial judge had erred in charging the jury that the burden is upon contestants, John Summerfield and Phyllis Summerfield Brock to show by the greater weight or preponderance of the evidence that this instrument (the Revoking Will of 1947) was obtained by undue influence.

Contention is made (1) that the foregoing was not assigned as error in the Court of Appeals; and (2) the court's charge is a correct statement of the Tennessee law.

Preliminary to a discussion of the issues involved it is desirable that there be a statement of certain facts which, in our opinion, have been conclusively established.

The Will of 1940 is unquestionably valid, and is not assailed upon any ground.

The proponent of said will, and the Revoking Will of 1947, and his sister, Emily Summerfield, occupied a confidential relationship with their father, Phil M. Halle. Myron A. Halle had been associated with his father in business for many years. The testator had made his home with his daughter for over 25 years. Their association was very intimate. The opportunities of both children to converse with the testator and influence his action were equal. He was devoted to both of them.

The said Phil M. Halle was a man of strong personality, not easily influenced; he was active in business after he had passed eighty (80) years of age.

Considering his capacity to make a will on the morning of April 26, 1947, and in the afternoon (2:00 o'clock) of that same day, his mental and physical condition could not have changed within a matter of a few hours.

Our conclusion therefore is that if he was competent to execute the will that was drafted by Mr. Johnson at 9:00 or 10:00 o'clock in the morning he was equally so in executing the Revoking Will in the afternoon. His age and condition of health were not an important factor in deciding the question of the due execution of either of these documents.

 It appears without contradiction that his daughter, Emily, made repeated requests to her father's nurse, Margaret Ware, to use her influence with him to change his will and leave her his interest in the business. It was not improper for her to make such a request, or to intercede with him herself to make such a will. It could not be thought of as undue influence.

Coming now to the question of the alleged undue influence by Myron A. Halle to induce his father to execute the Revoking Will and republish the Will of 1940, there is no evidence that the Will of 1940 was the result of any

undue influence upon the testator to make this will. When Myron A. Halle heard that Mr. Johnson had been to the testator's home, at the request of his sister, Emily, he was naturally concerned about the nature of this visit and the reason for it. He called Mr. Johnson over the phone, and the two passed some hot words regarding the object of his visit. When Mr. Phil M. Halle arrived at the store about 11:00 o'clock the subject of Mr. Johnson's visit to him that morning was naturally of great concern to Myron A. Halle. His father denied that he had made any will, but stated if he had done so he wanted it revoked; that he wanted no other will than the 1940 Will. It was then that Mr. Rosenfield, attorney for the partnership and Mr. Phil M. Halle, dictated the Revoking Will. It was duly signed and witnessed by two employees in the store. At the time it was thus executed Mr. Myron A. Halle was not present.

▮ Now conceding that he interceded with his father to revoke the will written by Mr. Johnson, was it an act that should be characterized as undue influence and cast suspicion upon the validity of this document? We think not. There is no evidence that Myron A. Halle upbraided his father about what he had done or unduly criticized him in any way. The record is silent as to the nature of the conversation between them. The evidence, however, is abundant that Mr. Phil M. Halle was extremely anxious that his 1940 Will remain in full force and effect as his last will and testament. This is shown by the testimony of two distinguished members of the Memphis Bar who conversed with him shortly after executing the Revoking Will, Mr. Sam Walker and Judge Robert H. Stickley. It is also shown by other credible evidence.

Turning now to a consideration of the substance of the wills which are the subject of this contest; the 1940 Will

made the following provisions, to wit, the testator takes notice of his equal partnership with his son, Myron A. Halle, and devised to him one half interest in the testator's half of the business "upon condition that he assume all the obligations and debts of the business". He devised and bequeathed to his daughter, Emily, and the National Bank of Commerce as Trustees, the remaining half to hold in trust for ten (10) years and pay her the income therefrom during that period. At the expiration of ten (10) years the trust terminated, and Emily became the sole owner in fee simple. If Emily predeceases the testator her interest is devised to "her issue in fee simple". Other provisions in favor of Emily and her family were made to meet emergencies. It thus clearly appears that the testator made but little difference between his children in disposing of his property under the Will of 1940.

The Second Will, written upon two yellow sheets of paper by Mr. Johnson, purports to revoke "all prior testamentary dispositions". He takes notice of the partnership and that his son, Myron, "has worked hard in the business and I want him to eventually own and operate it himself". He bequeaths to his daughter his entire one half of the business "which she shall sell to my son two years after my death". All the rest and residue of testator's property is divided equally between the two children. Its value is not shown.

The effect of the foregoing devise is to disinherit Myron A. Halle as to testator's half interest in the business and make Emily Halle Summerfield the sole beneficiary therein. Myron A. Halle could acquire it only by paying for it.

It is urged upon us that by reason of the confidential relation existing between Myron A. Halle and his father the taint of suspicion is cast upon the Revoking Will and

the burden is upon the proponent to remove it by showing it was the free and voluntary act of the testator. While conceding that such a relationship existed it does not follow as a matter of law that it, in and of itself, is such as to invalidate the will, or even cast suspicion upon it.

■ The law is well settled in this State that ''A person has a right by fair argument or persuasion to induce another to make a will, and even to make it in his own favor.'' Phillips' Pritchard on Wills, Section 130. The relationship between husband and wife is similar to that of parent and child. In Section 131, it is said:

''The influence which a child may acquire, from association with, and acts of kindness and attention to, a parent, stands on similar ground, and will not avoid the will of the parent, if the influence is exerted in a fair and reasonable manner, and without fraud or deception.''

We know of no authority which denies to a dutiful son the right to persuade his father not to disinherit him.

The draftsman of this Second Will, Rudolph Johnson, testified that it was to be a ''secret will'' as requested by the testator because if Myron A. Halle learned about it he would make an effort to have his father revoke it. We think this is an admission that it was an unjust will, and that Myron A. Halle would have every reason to persuade his father to revoke it, provided, of course, he kept within the bounds of legitimate argument.

■■ What is undue influence in the sense of the law must be decided by the application of sound principles and good sense to the facts of each case. See Phillips' Pritchard on Wills, Section 128, for a full and complete discussion of this question. ''It is not influence that vitiates [a will], but *undue* influence; and it must go to the extent of depriving the testator of his free agency,

and amount to moral coercion which he is unable to resist.'' *Peery* v. *Peery,* 94 Tenn. 328, 29 S. W. 1, 3; *Hammond* v. *Union Planters Nat. Bank,* 189 Tenn. 93, 222 S. W. (2d) 377; *Cude* v. *Culberson,* 30 Tenn. App. 628, 209 S. W. (2d) 506.

 The determinative question, which is one of law, is does the burden rest upon the proponent, Myron A. Halle, to show by the preponderance of all the evidence that the Revoking Will was free from the taint of undue influence, or does it rest upon these contestants to show that the will is invalid by reason of such influence as was reasonably calculated to deprive him of his free agency? This question was considered by the Court of Appeals for the Western Division in *Solari* v. *Albertine,* 29 Tenn. App. 61, 193 S. W. (2d) 111, wherein the testator and beneficiaries (grandchildren) occupied a confidential relationship. It was there held that mere proof of a confidential relationship ''does not raise the presumption that the benficiary has exercised undue influence over the testator and cast upon her the burden of disproving undue influence'', 29 Tenn. App. at page 75, 193 S. W. (2d) at page 117; that is in the absence of a showing of some activity on the part of the beneficiary in connection with the preparation or execution of the will. See annotations in 154 A. L. R. 584.

The foregoing statement of the general rule is sustained by the weight of authority. See 154 A. L. R. 593, et seq. Among the many cases cited are the following: *Powell* v. *Bechtel,* 340 Ill. 330, 172 N. E. 765; *In re Cookson's Estate,* 325 Pa. 81, 188 A. 904; *In re Wood's Estate,* 131 Cal. App. 465, 21 P. (2d) 626; *In re Mollan's Estate,* 181 Minn. 217, 232 N. W. 1; *In re Schillinger's Will,* 258 N. Y. 186, 179 N. E. 380. In *In re Cookson's Estate,* supra, it is held that, the mere fact that the proponent of a will is

a daughter of the testator does not shift the burden of proof on the issue of undue influence.

■ Considering "interest and opportunity" of a beneficiary to influence the execution of a will, and casting a suspicion upon its validity the rule is well stated in 154 A. L. R. 593, and 66 A. L. R. 254, as follows:

"It is settled that the mere fact that one who benefits by a will had a motive and an opportunity to exert influence over the testator is not sufficient, *of itself, to create a presumption that the will was the product of undue influence.*" (Emphasis supplied).

In *Koppal* v. *Soules,* Md., 56 A. (2d) 48, the court held: "The equitable doctrine of 'confidential relations' to shift burden of proof [from contestant to the proponent] does not apply in case of a devise or bequest from parent to child." In *In re Hannan's Estate,* 315 Mich. 102, 23 N. W. (2d) 222, 232, it is held, " 'There must be proof of acts of domination.' * * * 'There can be no fatally undue influence without a person incapable of protecting himself, as well as a wrong-doer to be resisted.' " In *Wilson* v. *Payton,* 251 Ala. 411, 37 So. (2d) 499, 500, it is held: "Appellant, proponent below, was a favored beneficiary. The testator was proponent's father and such a relationship is per se confidential. It is presumed prima facie that in transactions between parent and child the parent is the dominant party and that they are free from undue influence, and in such cases the burden is upon contestant to show that time and circumstances have reversed the order of nature, and that the dominance of the parent has been displaced by subservience to the child." *In re Logan's Estate,* 1900, 195 Pa. 282, 45 A. 729, Supreme Court of Pennsylvania, is to the same effect; also *Atkins* v. *Withers,* 94 N. C. 581, 591. "Evidence of affection as between persons related by blood or marriage

does not show the existence of a confidential relationship." Page on Wills, Vol. 2, Section 820, p. 623. "The fact that the devisee under a will had been, for a long time, the partner of the testator does not raise a presumption of undue influence." Page on Wills, Section 837, p. 649.

We are not unmindful of many cases in this State holding that under certain circumstances the burden is upon the proponent to show that the will is the free and voluntary act of the testator, as when the testator was feeble in mind and body, or so mentally distraught from one cause or another he could not resist the importunities of the one seeking his favor. Thus in *Burrow* v. *Lewis,* 24 Tenn. App. 253, 142 S. W. (2d) 758, the court states generally circumstances under which the burden may shift from the contestant to the proponent, as where the testator was ninety (90) years of age, sick and upon his death bed; *Cox* v. *Cox,* 36 Tenn. 81, where the testator was blind and unable to read; *Bartee* v. *Thompson,* 67 Tenn. 508, where testator was blind and illiterate. In such circumstances more is required than proof of formal execution. To the same effect is *Maxwell* v. *Hill,* 89 Tenn. 584, 15 S. W. 253, the testator being "illiterate" and made his mark to the will.

■ But the law indulges no presumption of invalidity due solely to the advanced age of the testator, or that a child exercised his or her influence upon him to induce its execution. These cases have no application to the facts of this case. The testator, while well advanced in years, was intelligent and well advised. He understood the contents of these documents.

■ The trial judge correctly charged the jury, and there is material evidence to support the verdict and judgment of the court.

It results that the assignments of error are sustained, the Court of Appeals is reversed, and the Circuit Court is affirmed. The costs are adjudged against the estate of Phil M. Halle.