IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 1999 Session

## MARY EDITH KELLEY, ET AL. v. MAHLON JOHNS

**Appeal from the Circuit Court for Maury County**
**No. 2994     Robert L. Jones, Judge**

---

**No. M1998-00912-COA-R3-CV - Filed July 12, 2002**

---

This appeal involves an intra-family dispute over the validity of an 88-year-old decedent's will leaving his farm to one of his nine children. After the will was admitted to probate in the Maury County Probate Court, six of the decedent's children filed suit in the Circuit Court for Maury County asserting that their father lacked testamentary capacity when he executed the will and that the will had been procured by undue influence by the child who received the farm. A jury determined that a confidential relationship existed between the decedent and his son when the disputed will was executed and that the will was procured by undue influence. Accordingly, the trial court entered an order invalidating the will and setting aside the pending probate proceeding. On this appeal, the child who received the farm from his father insists that the evidence does not support the jury's findings that he had a confidential relationship with his father and that he exerted undue influence over his father with regard to the substance of the will. We have determined that the record contains material evidence to support the jury's verdict and, therefore, affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Billy C. Jack and Claudia S. Jack, Columbia, Tennessee, for the appellant Mahlon Johns.

David L. Allen, Lawrenceburg, Tennessee, and Glenn L. Cox, Columbia, Tennessee, for the appellees, Mary Edith Kelley, Linda Orton, Evelyn Dolley, Nina Severson, Billie Johns, and Frankie Bostick.

## OPINION

### I.

Porter B. Johns, Sr. was born in July 1899 and was a lifelong resident of Maury County. He owned and operated a 450-acre farm near Columbia. Mr. Johns and his wife, Janie Lynn Johns, had nine children whom they raised on the farm. In 1978, Mr. and Ms. Johns executed reciprocal wills

leaving their respective estates to each other and then to their nine children. Ms. Johns died in December 1978, and her estate passed to Mr. Johns under the terms of her will.

Mr. Johns was seventy-nine years old when his wife died. On the day of his wife's death, Mr. Johns moved in with his son and daughter-in-law, Mahlon and Ocie Lee Johns. Mr. Johns spent most of his time with Mahlon and Ocie Lee Johns and did not visit his other children as frequently as he had before his wife died. Mahlon Johns and his father ate lunch each day at the Rebel Truck Stop and dined every evening with Ocie Lee Johns in their home. Mahlon Johns drove his father to most of the places he needed to go. Mr. Johns and his son also continued to farm together, although Mr. Johns's declining health prevented him from taking an active role in maintaining the farm. From 1982 forward, Mahlon Johns owned all the farm equipment and livestock in his own name.

Aside from the income from the farm, Mr. Johns's income consisted primarily of his monthly Social Security benefits. Every week, he paid Ocie Lee Johns thirty dollars for groceries. He also gave Mahlon Johns access to his bank accounts by adding his name to one account in 1979 and later by giving him permission to write checks on another account. During the time his father lived with him, Mahlon Johns wrote several checks on each of these accounts. Many of these checks were made payable to him or to one of the business ventures he owned.

Mr. Johns's health declined rapidly during 1982 and 1983. He suffered from emphysema, vertigo, a marked loss of appetite, and various gastric disorders, and he was hospitalized several times. His mental condition deteriorated as well. He was unable to recognize persons he should have known, and he began to have bouts of anxiety and confusion. On at least one occasion, Mr. Johns experienced delusions concerning his wife's death. Accordingly, Dr. J. O. Williams, his family physician, gave him a prescription for Haldol to alleviate some of the nervousness and delusions he was experiencing.

In 1983, Mr. Johns visited the law office of Jerry Colley, his attorney for more than twenty years, to seek assistance in drafting a new will. Mr. Johns told Mr. Colley that he desired to leave his farm to Mahlon Johns and to leave his money to his remaining children to be paid out in installments over the next twenty years. Mr. Colley requested Mr. Johns to return in one week to execute his new will.

Mr. Colley did not harbor any doubt that Mr. Johns was competent to dispose of his property and to execute a will. However, he was concerned that Mr. Johns's plans for the disposition of his farm would upset his other children. Accordingly, when Mr. Johns returned to his office on February 9, 1983, Mr. Colley asked Tom Hardin, another experienced Columbia lawyer, to interview Mr. Johns privately for the purpose of forming an independent opinion regarding Mr. Johns's testamentary capacity. After speaking privately with Mr. Johns, Mr. Hardin informed Mr. Colley that he believed that Mr. Johns was competent to make a will disposing of his real and personal property.

Following Mr. Johns's conversation with Mr. Hardin, Mr. Colley reviewed the new will with Mr. Johns, and then Mr. Johns executed the will in the presence of N. Houston Parks, another Columbia lawyer, and Wynona Doggett, a legal secretary. As Mr. Johns was leaving his office, Mr. Colley suggested that he should ask his family physician to examine him to verify that he was competent to execute a will. He explained to Mr. Johns that medical verification of his capacity to execute a will could be helpful if any of his children later challenged the will.

On February 10, 1983, the day after he executed his new will, Mr. Johns paid a visit to Dr. Williams who determined that he was competent to dispose of his property and to execute a will. Dr. Williams later prepared a letter reflecting his opinion of Mr. Johns's testamentary capacity. The circumstances prompting the preparation of this letter are unclear. It may very well have been in response to Mahlon Johns's request for written verification of Dr. Williams's conclusions after questions were raised about the will.

Mr. Johns lived with Mahlon and Ocie Lee Johns until August 18, 1987, when he died of chronic obstructive pulmonary disease. Shortly thereafter, Mahlon Johns submitted his father's February 9, 1983 will for probate. On September 10, 1987, six of Mr. Johns's other surviving children filed a complaint in the Maury County Probate Court contesting the will. Accordingly, the case was transferred to the Circuit Court for Maury County. A three-day trial ensued. After the trial court denied Mahlon Johns's motion for a directed verdict, a jury determined that Mr. Johns had testamentary capacity on February 9, 1983. However, the jury also concluded that Mahlon Johns and his father had a confidential relationship when his father executed his will and that the will had been procured by undue influence. Mahlon Johns passed away after entry of the judgment, and his estate perfected this appeal.

**II.**

Mahlon Johns's estate raises two issues on this appeal. First, it takes issue with the trial court's denial of his motion for a directed verdict, contending that the contestants failed to submit evidence sufficient to create a jury question on the issues of confidential relationship and undue influence. Second, the estate maintains that the record does not contain material evidence to support the jury's conclusions that Mr. Johns had a confidential relationship with Mahlon Johns when he executed his February 9, 1983 will and that Mahlon Johns exerted undue influence over his father in the preparation and execution of his will.

We need only consider here the challenge to the evidentiary foundation of the jury's verdict because the outcome of that issue necessarily dictates the fate of the estate's directed verdict claim. Directed verdicts cannot be granted unless the evidence permits reasonable minds to reach but one conclusion. *Childress v. Currie*, ___ S.W.3d ___, ___, 2002 Tenn. LEXIS 194, at *8 (Tenn. May 3, 2002); *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). If there is material evidence to support a jury's verdict, then, of necessity, granting a directed verdict for the losing party would have been improper because the evidence permitted reasonable minds to reach more than one conclusion. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000).

Tennessee's traditional standard for reviewing the evidentiary foundation of a jury's verdict is codified in Tenn. R. App. P. 13(d). The rule provides that "[f]indings of fact by a jury in a civil action shall be set aside only if there is no material evidence to support the verdict." Appellate courts employing this standard may not review the evidence de novo. *Alexander v. Armentrout*, 24 S.W.3d at 271. Nor may they weigh the proof to determine where the preponderance of the evidence lies. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999). Rather, appellate courts must (1) take the strongest legitimate view of the evidence that favors the verdict, (2) assume the truth of all evidence that supports the verdict, and (3) allow all reasonable inferences to sustain the verdict. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000); *Dickey v. McCord*, 63 S.W.3d 714, 719 (Tenn. Ct. App. 2001). If the record contains any material evidence to support the verdict, the judgment based on the verdict must be affirmed. *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978); *Moss v. Sankey*, 54 S.W.3d 296, 298-99 (Tenn. Ct. App. 2001).

A challenge to the evidentiary foundation for a jury's verdict in a civil case requires a reviewing court to search the record to ascertain whether material evidence supporting the verdict is present. *Hohenberg Bros. Co. v. Missouri Pac. R.R.*, 586 S.W.2d 117, 119 (Tenn. Ct. App. 1979). The concept of materiality does not relate to the weight of evidence. Rather, it involves the relationship between the proposition that the evidence is offered to prove and the issues in the case. *Knoxville Traction Co. v. Brown*, 115 Tenn. 323, 331, 89 S.W. 319, 321 (1905) (holding that material evidence is evidence material to the question in controversy); 1 John W. Strong, *McCormick on Evidence* § 185, at 637 (5th ed. 1999) ("*McCormick on Evidence*"). Evidence that does not relate to a matter in issue[1] is immaterial. *People v. Torrez*, 37 Cal. Rptr. 2d 712, 717 (Cal. Ct. App. 1995); *Getz v. State*, 538 A.2d 726, 731 (Del. Super. Ct. 1988); *Nahmias Realty, Inc. v. Cohen*, 484 N.E.2d 617, 621 (Ind. Ct. App. 1985); *Town of Silver City v. Silver City Police Officers Ass'n*, 857 P.2d 28, 32 (N.M. 1993); *Evans-Smith v. Commonwealth*, 361 S.E.2d 436, 441 (Va. Ct. App. 1987). Thus, for example, evidence regarding a manufacturer's negligence would be immaterial in a products liability action based on strict liability. Neil P. Cohen, et al., *Tennessee Law of Evidence* § 4.01[3], at 4-8 (4th ed. 2000).[2] Thus, Tenn. R. App. P. 13(d) requires the reviewing court to determine whether the record contains any evidence relating to the matters in issue which, when reviewed in a light most favorable to the prevailing party, supports the jury's verdict.

## III.

Mahlon Johns's estate takes issue on this appeal with the evidentiary foundation for the jury's conclusions that he had a confidential relationship with his father during the later years of his

---

[1]What is "in issue" in a case depends primarily on the pleadings and the applicable rules of substantive law. *McCormick on Evidence* § 185, at 637.

[2]Similarly, evidence of an employee's negligence would be immaterial in a worker's compensation case because the worker's negligence would not affect his or her right to compensation. *Mydlarz v. Palmer/Duncan Constr. Co.*, 682 P.2d 695, 703-04 (Mont. 1984). Likewise, expert testimony regarding a fetus's capacity to sense pain is immaterial in an action to enjoin the enforcement of a statute prohibiting "partial birth" abortions on the ground that the statute is void for vagueness. *Planned Parenthood v. Verniero*, 22 F. Supp. 2d 331, 340 (D.N.J. 1998).

father's life and that he exerted undue influence over his father with regard to the preparation of the February 9, 1983 will. The appellate courts must review the evidentiary foundation of a jury's verdict in a will contest case using the same rules used to review jury verdicts in other civil cases. *Thomas v. Hamlin*, 56 Tenn. App. 13, 22, 404 S.W.2d 569, 573 (1964). Accordingly, we must examine the record to ascertain whether it contains any evidence favorable to the contestants regarding the existence of a confidential relationship between Mr. Johns and Mahlon Johns and Mahlon Johns's exertion of undue influence on his father in connection with the preparation of his father's will.

## A.

Invalidating a will because of undue influence is generally not a simple undertaking. While undue influence can be proved either by direct or by circumstantial evidence, direct evidence is rarely available. *In re Estate of Maddox*, 60 S.W.3d 84, 88 (Tenn. Ct. App. 2001). Thus, in most cases, the contestants establish undue influence by proving the existence of suspicious circumstances warranting the conclusion that the will was not the testator's free and independent act. *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989). The courts have refrained from prescribing the type or number of suspicious circumstances necessary to invalidate a will because of undue influence. Instead, they have pointed out that the issue should "be decided by the application of sound principles and good sense to the facts of each case." *Childress v. Currie*, ___ S.W.3d at ___, 2002 Tenn. LEXIS 194, at *13; *Halle v. Summerfield*, 199 Tenn. 445, 454, 287 S.W.2d 57, 61 (1956); *Harper v. Watkins*, 670 S.W.2d 611, 621 (Tenn. Ct. App. 1983).

The scope of the proof regarding undue influence is quite broad. *In re Estate of Maddox*, 60 S.W.3d at 89; 1 Jack W. Robinson & Jeff Mobley, *Pritchard on the Law of Wills and Administration of Estates* § 130, at 209-30 (5th ed. 1994) ("*Pritchard on Wills*"). Over sixty years ago, Judge John DeWitt, writing for this Court, stated:

> It is generally held that upon such issues every fact and circumstance, no matter how little its probative value, which throws light upon these issues, is admissible. The range of inquiry may cover, not only the provisions of the will itself, and the circumstances surrounding its execution, but also the mental condition of the testator, the motive and opportunity of others to influence him unduly, his relations with persons benefitted by or excluded from the will, and the acts and declarations of such persons. Although none of these matters standing alone may be sufficient to establish the issues, yet taken together they may have that effect.

*Hager v. Hager*, 17 Tenn. App. 143, 161, 66 S.W.2d 250, 260 (1933).

The suspicious circumstances most frequently relied upon to establish undue influence are: (1) the existence of a confidential relationship between the testator and the beneficiary; (2) the testator's physical or mental deterioration; and (3) the beneficiary's active involvement in procuring

the will. *In re Elam's Estate*, 738 S.W.2d 169, 173 (Tenn. 1987); *In re Estate of Hamilton*, 67 S.W.3d 786, 792 (Tenn. Ct. App. 2001); *Fell v. Rambo*, 36 S.W.3d 837, 847-48 (Tenn. Ct. App. 2000). In addition to proof of a transaction benefitting the dominant person in a confidential relationship, other recognized suspicious circumstances include: (1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms; (6) the testator being in an emotionally distraught state; (7) discrepancies between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator. *Halle v. Summerfield*, 199 Tenn. at 454- 57, 287 S.W.2d at 61-62; *In re Estate of Maddox*, 60 S.W.3d at 89; *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989); 1 *Pritchard on Wills* § 148, at 233.

The burden of proof is on the contestant in a will contest case. *In re Estate of Elam*, 738 S.W.2d at 171; *Bills v. Lindsay*, 909 S.W.2d 434, 438 (Tenn. Ct. App. 1993). Without direct evidence of undue influence, a contestant must establish the existence of more than one suspicious circumstance to make out a prima facie case of undue influence. Proof of a confidential relationship alone will not support a finding of undue influence. *Halle v. Summerfield*, 199 Tenn. at 455, 287 S.W.2d at 61; *In re Estate of Maddox*, 60 S.W.3d at 89. However, if a contestant has proved the existence of a confidential relationship, together with a transaction that benefits the dominant party to the relationship or another suspicious circumstance, a presumption of undue influence arises that may be rebutted only by clear and convincing evidence. *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995); *In re Estate of Hamilton*, 67 S.W.3d at 793; *Hager v. Fitzgerald*, 934 S.W.2d 668, 671 (Tenn. Ct. App. 1996).

### B.
#### EXISTENCE OF A CONFIDENTIAL RELATIONSHIP

We turn first to the question of whether a confidential relationship existed between Mahlon Johns and his father. Mahlon Johns's estate insists that the only conclusion to be drawn from the evidence is that they had nothing more than a father and son relationship. We respectfully disagree. The record contains material evidence from which a jury could conclude that Mahlon Johns was in a position where he could influence and control his father.

Confidential relationships can assume a variety of forms, and thus the courts have been hesitant to define precisely what a confidential relationship is. *Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974). In general terms, it is any relationship that gives one person the ability to exercise dominion and control over another. *Childress v. Currie*, ___ S.W.3d at ___, 2002 Tenn. LEXIS 194, at *10; *Givens v. Mullikin ex rel. Estate of McElwaney*, ___ S.W.3d ___, ___, 2002 WL 451822, at *19 (Tenn. 2002); *Mitchell v. Smith*, 779 S.W.2d at 389. It is not merely a relationship of mutual trust and confidence, but rather it is one

> where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party.

*Iacometti v. Frasinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973).

Fiduciary relationships are confidential per se because of the legal status of the parties. They automatically give rise to a presumption of undue influence with regard to transactions that benefit the fiduciary. Examples of such fiduciary relationships include that between guardian and ward, attorney and client, or conservator and incompetent. *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977); *Mitchell v. Smith*, 779 S.W.2d at 389; *Parham v. Walker*, 568 S.W.2d 622, 625 (Tenn. Ct. App. 1978). Relationships not fiduciary in nature, even those that are inherently confidential, such as those between family members,[3] are not confidential per se and require proof of the elements of dominion and control in order to establish the existence of a confidential relationship. *Matlock v. Simpson*, 902 S.W.2d at 385-86; *Kelly v. Allen*, 558 S.W.2d at 848.

Accordingly, evidence that two persons are members of the same family, without more, lends no support to an undue influence claim. Proof that one family member exercised dominion and control over another establishes the existence of a confidential relationship but does not make out a prima facie claim of undue influence. In addition to proving the existence of a confidential relationship between two family members, a will's contestant must establish at least one other suspicious circumstance, such as a transaction benefitting the dominant party in the confidential relationship.

The record contains material evidence that Mahlon Johns exercised increasing dominion and control over his father's financial affairs after 1978. As Mr. Johns's physical and mental health declined, he became increasingly dependent on his son and daughter-in-law for most of his daily needs. From and after 1979, Mahlon Johns maintained significant control over his father's assets. He was authorized to write checks on his father's accounts, and between 1979 and 1987, he wrote and signed checks on these accounts to himself, his various businesses, and even to his wife's daughter. The evidence regarding Mahlon Johns's seemingly unrestrained access to his father's assets, coupled with the undisputed evidence of the decline in his father's physical and mental health and increased dependence on his son and daughter-in-law, provide material evidence to support the jury's finding that a confidential relationship existed between Mahlon Johns and his father.

## C.
### OTHER "SUSPICIOUS" CIRCUMSTANCES

Proof of a confidential relationship between Mr. Johns and Mahlon Johns is not, by itself, sufficient to create a jury question regarding whether Mahlon Johns exerted undue influence on his father with regard to his will. To make out a prima facie claim of undue influence, the contestants of the February 9, 1983 will must establish the existence of other suspicious circumstances that could

---

[3]The normal relationships between family members and relatives are not, in and of themselves, confidential relationships. *Halle v. Summerfield*, 199 Tenn. at 456-57, 287 S.W.2d at 62; *Mitchell v. Smith*, 779 S.W.2d at 389; *Harper v. Watkins*, 670 S.W.2d at 628. Accordingly, a normal relationship between a mentally competent parent and an adult child does not raise a presumption of invalidity in a will or other transaction. *Bills v. Lindsay*, 909 S.W.2d at 440.

prompt a fact-finder to conclude that Mr. Johns's February 9, 1983 will was not entirely his free and independent act. *In re Estate of Maddox*, 60 S.W.3d at 89. The evidence submitted by the contestants establishes seven other suspicious circumstances that could appropriately convince a fact-finder that Mahlon Johns had exerted undue influence on his father.

First, the February 9, 1983 will was executed when Mr. Johns was eighty-four years old and in declining physical and mental health. Second, the will left the family farm to Mahlon Johns alone, even though Mr. Johns had told at least three of his children that the farm would be distributed in equal shares to his nine children upon his death. Third, leaving the farm to Mahlon Johns was inconsistent with the relationship Mr. Johns had had with his other eight children prior to their mother's death. Fourth, Mahlon Johns and his wife had shielded Mr. Johns from interacting with his other children after he moved into their home in 1978. Fifth, Mr. Johns was exhibiting symptoms of significant mental deterioration during 1982 and 1983.[4] Sixth, the execution of the February 1983 will leaving the entire farm to Mahlon Johns was kept secret from his brothers and sisters until after Mr. Johns died. Seventh, Mr. Johns told one of his daughters that he had reluctantly "signed something" for Mahlon after Mahlon told him that two of his other daughters intended to put him in a nursing home if he did not sign the document.

It is not our role at this stage of the proceeding to evaluate the credibility of the evidence submitted by the contestants to establish their undue influence claim. Our role is limited to determining whether the record contains material evidence to support the jury's findings that Mahlon Johns had a confidential relationship with his father and that he exercised undue influence over his father with regard to the preparation and execution of the February 9, 1983 will. The evidence of the circumstances identified in this section qualifies as the material evidence required to support a verdict for the contestants. Accordingly, we have no basis for concluding that the record does not contain material evidence to support the verdict.

## IV.

We affirm the judgment vacating the probate of the February 9, 1983 will of Porter B. Johns, Sr. on the ground that it is not his valid last will and testament, and we remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to the Estate of Mahlon Johns and its surety[5] for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[4]Several of Mr. Johns's children testified that during 1982 and 1983, Mr. Johns began to fail to recognize long-time acquaintances he should have known. He was also taking Haldol, a strong tranquilizer that often causes anxiety, depression, confusion, and hallucinations.

[5]Proponents of a will procured through undue influence should be responsible for the costs. *Smith v. Haire*, 133 Tenn. 343, 347, 181 S.W. 161, 162 (1915); *Mitchell v. Smith*, 779 S.W.2d at 392.