**PLANNED PARENTHOOD OF CENTRAL NEW JERSEY,**
**et al., Plaintiffs,**

v.

**Peter G. VERNIERO, et al., Defendants.**

**No. Civ.A. 97–6170(AET).**

United States District Court,
D. New Jersey.

Sept. 10, 1998.

Lenora M. Lapidus, American Civil Liberties Union of New Jersey, Newark, NJ, for Planned Parenthood of Central New Jersey, Herbert Holmes, M.D., David Wallace, M.D., Gerson Weiss, M.D., plaintiffs.

Dante Di Pirro, Office of NJ Attorney General, Trenton, NJ, for Peter G. Verniero, New Jersey Board of Medical Examiners, Len Fishman, defendants.

Richard F. Collier, Jr., Somerset, NJ, for Donald T. DiFrancesco, Jack Collins, intervenors-defendants.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

This matter comes before the Court upon Defendants' application to permit certain testimony at a hearing on Plaintiffs' motion for a permanent injunction. Plaintiffs oppose Defendants' motion by seeking to limit Defendants' presentation and also seek leave to file a summary judgment motion. The Court reviewed the parties' written submissions and conducted oral argument on July 13, 1998. The Court also permitted supplemental written memoranda, received on July 24, 1998. For the reasons that follow, Defendants' application is granted in part and denied in part, and Plaintiffs' application for leave to file a summary judgment motion is denied.

### I. BACKGROUND

On December 15, 1997, the New Jersey State Legislature passed "an act prohibiting the performance of partial-birth abortions." Act of 1997, ch. 262, 1997 N.J.Sess.Law Serv. 271–72 (West) (to be codified at N.J.Stat.Ann §§ 2A:65A–5 to –7) [hereinafter the Act]. The Act initially passed both houses of the New Jersey Legislature in June 1997, but was vetoed by Governor Whitman on the

"advice of the Attorney General, the Office of Legislative Services, and [her] chief counsel that the bill in its current form is unconstitutional." Veto of A–2409, dated June 23, 1997. On December 4, 1997, the New Jersey assembly overrode Governor Whitman's veto; on December 15, the New Jersey Senate followed suit and the Act had immediate effect. *See* Act § 4.

Immediately after the Legislature enacted the Act, Plaintiffs filed this lawsuit against Attorney General Peter Verniero, the New Jersey Board of Medical Examiners, and Len Fishman, Commissioner of the Department of Health and Senior Services. On December 16, 1997, the Court entered a temporary restraining order prohibiting Defendants from enforcing the Act. Attorney General Verniero stated that he would not defend the Act as he had already declared the Act unconstitutional. On December 22, 1997, the New Jersey Legislature moved to intervene and defend the lawsuit. On December 24, 1997, the Court granted the Legislature's motion and, with the parties' consent, extended the temporary restraining order until final resolution of the case.

Plaintiffs challenge the Act as unconstitutional and request a permanent injunction against enforcement of the Act. Plaintiffs cite four reasons to declare the Act unconstitutional. First, "the definitions of prohibited abortion methods were so imprecise as to render the laws unconstitutionally vague." Brief for Plaintiff at 3–4. Second, "the ambiguous definitions [of the Act] potentially encompas[s] all of the safest and most common abortion procedures and unduly burdened the right to obtain abortions by chilling the provision of these procedures." Brief for Plaintiff at 4. Third, "the laws forc[e] physicians and their patients to resort to less safe and less available methods of abortion." Brief for Plaintiff at 4. Fourth, "the [Act] lack[s] constitutionally compelled exceptions for abortions necessary to preserve maternal health, and included only constitutionally inadequate exceptions for abortions necessary to preserve maternal life." Brief for Plaintiff at 4.

## II. PROPOSED WITNESSES

Pursuant to the case management order filed July 7, 1998 the parties have submitted proposed lists of witnesses for the hearing to be conducted on September 10–13, 1998. Plaintiffs seek to offer four witnesses and Defendants seek to offer fourteen specific witnesses, and three, or more, potential witnesses.

### A. Plaintiffs' Witnesses
#### 1. Carolyn Westoff, M.D.

Plaintiffs seek to offer Dr. Westoff to testify about the various methods of abortion, the safety of these methods, how she and other physicians perform abortions, the factors that inform choice of method for any given physician and patient, and how Dr. Westoff interprets the language of the Act. Dr. Westoff's testimony concerns the Act's vagueness, which method the Act reaches, and the impact of the Act on women. Dr. Westoff is an Associate Professor of Clinical Obstetrics and Gynecology and Public Health (Epidemiology) at the College of Physicians and Surgeons of Columbia University.

#### 2. David Wallace, M.D.

Plaintiffs seek to offer Dr. Wallace's testimony on how physicians perform various abortions, the factors involved in choosing an abortion method, and which methods Dr. Wallace understands the Act to reach. Dr. Wallace's testimony addresses the Act's vagueness, the methods of abortion the Act reaches, and the medical impact of the Act on women. Dr. Wallace is President of the Medical Staff, Chairman of the Department of Obstetrics and Gynecology, and Director of the Residency Program at Monmouth Medical Center in New Jersey.

#### 3. Herbert Holmes, M.D.

Dr. Holmes is a plaintiff in this case and will testify about how physicians perform various abortions, the factors that inform choice of method for any given physician and patient and which methods Dr. Holmes understands the language of the Act to reach. This testimony is relevant to the issues of vagueness, the methods the Act could reach, and the medical impact of the Act on women. Dr. Holmes is a Clinical Associate Professor

of Obstetrics and Gynecology at the University of Medicine and Dentistry of New Jersey.

#### 4. Gerson Weiss, M.D.

Dr. Weiss is a plaintiff in this case and will offer medical background and technical evidence to assist the Hearing Judge determine the Act's constitutionality. Dr. Weiss oversees the provision of all obstetrical and gynecological care at UMDNJ–Newark, including abortions for women up to 18 weeks lmp (last menstrual period). Dr. Weiss performs abortions and teaches residents the full range of obstetric and gynecological care, including abortions. He will testify to the vagueness of the Act's language and how it could affect his practice. Dr. Weiss is a Professor, Chairman and Chief of Service of the Department of the Obstetrics and Gynecology at UMDNJ in Newark, New Jersey.

### B. Defendants' Witnesses

Summary evaluations of each proposed defense witness can be seen in *Court Exhibit A. See infra* p. 336.

#### 1. Brian Clowes, Ph.D.

Defendants seek to offer Dr. Clowes to testify that one cannot conclude that abortion is safer than childbirth for a mother's health. He will testify that statistics concerning abortion mortality are not reliable because neither New Jersey nor the Center for Disease Control and Prevention monitors, audits, or otherwise verifies the accuracy of its received reports. He will testify that conclusions relying on available mortality statistics are invalid because of the unreliable statistics. However, based solely on the mortality statistics available, Dr. Clowes will testify that abortions after 18 weeks lmp are more dangerous than continuing pregnancy through childbirth. In addition, Dr. Clowes will testify that based solely on the mortality statistics available, the relative risks of dilation and evacuation abortions (D & E) are comparable to those of induction abortions after 16 weeks lmp. Furthermore, as there are no statistics available concerning the morbidity or mortality of the abortion method(s) variously called "intact dilation and evacuation" or "intact D & E," "dilation and extraction" or "D & X" and "intact dilation

and extraction," there is no valid basis for the conclusions concerning the safety, prevalence or any other feature of such method(s).

#### 2. Frank H. Boehm, M.D.

Defendants seek to offer Dr. Boehm as an expert in obstetrics and maternal-fetal medicine. Dr. Boehm has performed abortions including induction abortions and D & E abortions. He will testify that, regarding the abortion method described in the Act, there has been no peer review; it has not been the subject of clinical trials; there are no data available comparing it to other abortion methods; there are no epidemiological, safety or other data; there is no professional literature; there are no available statistics; it is not taught in medical school; there are no situations in which it is the best or necessary abortion method to preserve the life or health of a pregnant woman; its unavailability will not increase the risks to the mother's health or life; it is used only after 19 weeks lmp; it requires advance planning, is time consuming and logistically difficult to perform, and its various steps involve risks and complications; there are alternatives that are well-documented and which are commonly and effectively used; and it is contrary to the ethics and standards of the medical profession. In addition, Dr. Boehm will testify that the language of the Act is not vague, and does not apply to vacuum aspiration abortions, classic D & E abortions, and/or induced abortions. Dr. Boehm is a Clinical Professor of Obstetrics and Gynecology at the Vanderbilt University School of Medicine and the Director of Obstetrics and the Maternal Fetal Medicine Division at the Vanderbilt University Medical Center in Nashville, Tennessee.

#### 3. Watson A. Bowes, Jr., M.D.

Defendants seek to offer Dr. Bowes to explain various abortion methods. His testimony will explain the medical aspects of the Act and the abortion method it describes. Dr. Bowes is board certified in, and a Professor of Obstetrics and Gynecology at the University of North Carolina School of Medicine, Chapel Hill, North Carolina.

### 4. Nancy G. Romer, M.D.

Defendants seek to offer Dr. Romer's testimony about the abortion method described in the Act. Dr. Romer privately practices obstetrics and gynecology and is an assistant clinical professor at the Wright State University School of Medicine Department of Obstetrics/Gynecology in Dayton, Ohio.

### 5. Other Potential Witnesses

#### a. Representative of the New Jersey Department of Health

Defendants may seek to call a representative of the New Jersey Department of Health to describe the available statistics about: abortion, the contents thereof, and abortion providers and/or Plaintiffs in New Jersey.

#### b. Representative of Robert Wood Johnson University Hospital in New Brunswick

Defendants may seek to call a representative of the Robert Wood Johnson University Hospital in New Brunswick to describe abortions at this hospital and the use of digoxin or potassium chloride in connection with abortions.

#### c. Representatives of Monmouth Medical Center and UMDNJ

Defendants may seek to call a representative from the respective hospitals to authenticate documents produced by the respective hospitals.

### 6. Dr. David Mark, Ph.D.

Defendants seek to call Dr. David Mark to testify about DNA, its properties and functions, and DNA fingerprinting techniques that allegedly establish and confirm an unborn child as a separate, unique, and irreplaceable human being from conception throughout the entire gestation period. Dr. Mark will explain Substance P—the neuropeptide in pain transmission, other pain mechanisms, and testify to their activity at different gestational periods. In addition, Dr. Mark will explain the recent developments in recombinant DNA technology, the resulting discoveries about human development during gestation, and how science obtains knowledge about human beings. Dr. Mark has a Ph.D. in Molecular Biology and is currently the Executive Director of Biochemistry and Physiology at Merck Research Laboratories in Rahway, New Jersey.

### 7. Dr. Marie A. Peeters–Ney, M.D.

Defendants seek to offer Dr. Marie A. Peeters–Ney to testify about the conception process, the genetic makeup of a human being, and scientific facts relating to the completeness, uniqueness, and total separateness of a human being from the period of conception throughout the gestational period. She will reinforce the conclusion that a child in utero, which is the subject of the partial birth abortion, is a complete, separate and unique human being during the period subject to the prohibitions of the Act. Dr. Peeters–Ney was a human geneticist at le Service de genetique fondamentale à l'Hopital des Enfants Malades in Paris, France from 1987–1995.

### 8. Dr. Ola D. Saugstad, M.D.

Defendants seek to call Dr. Ola D. Saugstad to testify. Dr. Saugstad is an international neonatalogist that will testify about the current state of medicine and treatment for fetuses between 24–30 weeks lmp. He will testify that an unborn child is separate, uniquely human, and can experience pain. Dr. Saugstad will also address additional biological issues of fact that relate to an unborn child as complete, separate, and unique at 18–24 weeks lmp. Dr. Saugstad is a professor of Pediatrics at the University of Oslo, the Director of the Department of Pediatric Research and a consultant in Neonatology at the National Hospital at the University of Oslo, in Oslo, Norway.

### 9. Dr. Charles Langer, M.D., F.R.C.S.

Defendants seek to call Dr. Jacob Charles Langer to testify. Dr. Langer will testify as an expert in fetal surgery, fetal medicine, and fetal intervention procedures. His testimony will explain the available procedures for 18–30 week lmp fetuses, how medicine treats an unborn child at this age and the need for anesthesia in these procedures. His testimony will focus on an unborn child as a separate patient requiring a unique body of medicine for its well-being. Dr. Langer will use films to explain his testimony. Dr. Langer is currently an Associate Professor with tenure in the Department of Surgery and an Associate Professor in the Department of

Pediatrics at the Washington University School of Medicine in St. Louis, Missouri.

### 10. Dr. Gabriele deVerber, M.D., F.A.C.P.

Defendants seek to call Dr. Gabriele deVerber as a witness to testify that an unborn child experiences pain during the gestational periods pertinent to this statute. She will explain fetal biological and neurological development throughout gestation and how the body of an unborn child transmits pain during the periods of gestation relevant to these proceedings. Dr. deVerber is a Fellow of Pediatric Neurology at the Hamilton Civic Hospital Research Center in Hamilton, Ontario, Canada.

### 11. Dr. Nicholas Fisk, Ph.D., F.R.A.C.O.G., F.R.C.O.G., C.M.F.M., D.D.V.

Defendants seek to call Dr. Nicholas Fisk to explain the history of medical assumptions about newborns, especially that until the mid 1980's babies were not thought to feel pain and need analgesia for surgical procedures. Dr. Fisk will testify that in clinical studies stress responses in an unborn child were present at the earliest ages of gestation, including weeks age 18–30 lmp. Dr. Fisk will testify as an expert in fetal response to stimuli, fetal surgery and intervention, obstetrics, perinatology, and fetal medicine. Dr. Fisk is a Professor of Obstetrics and Gynecology at the Institute of Obstetrics and Gynecology at Queen Charlotte's Hospital in London, England.

### 12. Dr. Clayton Ward Kischer, Ph.D.

Defendants seek to offer Dr. Clayton Ward Kischer to explain human gestation and how a gestating fetus is a complete, separate and unique human being. Dr. Kischer will also discuss facts concerning the gross morphological appearance and development of chemical and neurological passageways predetermined by the methylation silencing and cascading in an unborn child. Dr. Kischer is a professor emeritus at the University of Arizona in Tucson, Arizona, with a Ph.D. in Experimental Embryology and will testify as a human embryologist.

### 13. Dr. Julian E. DeLia, M.D., M.B.A.

Defendants seek to call Dr. Julian E. DeLia as a witness to testify as an expert in fetal medicine, perinatology, obstetrics and fetal intervention surgery, and special procedures in fetal treatment. He will explain the development of an unborn child throughout the late first and second trimesters of pregnancy. Dr. DeLia will describe the current state of fetal medicine, and the uniqueness, completeness, and separateness of an unborn child at the ages for which he provides treatment. Dr. DeLia will use film to explain his testimony. Dr. DeLia currently teaches Obstetrics and Gynecology at the University of Illinois at Chicago, in Chicago, Illinois.

### 14. Vincent Rue, Ph.D.

Defendants seek to offer the testimony of Dr. Vincent Rue to explain the psychological harm done to women who have abortions. Dr. Rue is the co-director of a center in New Hampshire that helps women and men recover from traumatic pregnancy loss experiences, including spontaneous and induced abortion, stillbirth, and adoption. He is the principle investigator of a transnational project on psychosocial stressors, trauma and comparative pregnancy loss. Dr. Rue also has a limited, private, psychotherapy practice. Dr. Rue has a Ph.D. in Child Development and Family Relations.

### 15. Brenda Shaffer, R.N.

Defendants seek to call Ms. Brenda Shaffer, R.N. to explain a partial birth abortion and the response of an unborn child to the procedure. Nurse Shaffer was, on occasion, able to fully observe the child's response during the procedure. Nurse Shaffer has assisted abortions, including D & E's, D & C's and partial birth abortions. Nurse Shaffer is a surgical nurse at the Women's Medical Center in Dayton, Ohio.

*COURT EXHIBIT A*

**Specific Defense Expert Witnesses**

*PPCNJ v. Verniero*

| Name | Statistics | Medical Opinion | DNA | Pain | Gestational Development | Fetal Surgery, Medicine and Intervention Expert | Pediatric Neurology | Observe and Assist |
|---|---|---|---|---|---|---|---|---|
| Dr. Clowes | Yes | N | N | N | N | N | N | N |
| Dr. Boehm | N | Yes | N | N | N | N | N | Yes |
| Dr. Bowes | N | Yes | N | N | N | N | N | Yes |
| Dr. Romer | N | Yes | N | N | N | N | N | Yes |
| Dr. Mark | N | N | Yes | Yes | Yes | N | N | N |
| Dr. Peeters–Ney | N | N | Yes | N | Yes | N | N | N |
| Dr. Saugstad | N | N | N | Yes | Yes | N | Yes | N |
| Dr. Langer | N | N | N | N | N | Yes | N | N |
| Dr. deVerber | N | N | N | Yes | Yes | N | Yes | N |
| Dr. Fisk | N | N | N | Yes | Yes | Yes | Yes | N |
| Dr. Kischer | N | N | N | N | Yes | N | N | N |
| Dr. DeLia | N | N | N | N | Yes | Yes | N | N |
| Dr Rue | N | N | N | N | N | N | N | N |
| Nurse Shaffer | N | N | N | N | N | N | N | Yes |

## III. DISCUSSION

### A. Purpose of the Hearing/Ripeness for Summary Judgment

Plaintiffs seek an Order permanently restraining enforcement of the Act. The District Judge has temporarily restrained enforcement of the Act, finding that "(a) immediate, irreparable injury and damage will likely result to plaintiffs and their patients ... (b) plaintiffs have demonstrated a probability of success on the merits of their claims ... [and][c] the balance of harm and the public interest weigh in favor of granting the requested temporary injunctive relief...." ORDER filed December 12, 1997[9–1] at 2. The temporary restraint remains in effect by consent of the parties.

Basically, Plaintiffs claim that the law is constitutionally flawed on its face. Ordinarily, such a case might be decided upon the submission of briefs and certifications. *See Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986). Here, however, the parties agreed from the outset (at the time of the TRO hearing, again at the initial case management conference, and thereafter) that certain discovery and testimony at a hearing would be appropriate. The Hearing Judge referred the matter here to develop an appropriate case management order. The purpose of the hearing on the constitutionality of the Act is to provide the Court with sufficient general and technical medical explanation so the case could be fairly decided. It was certainly not the Court's understanding that this was to be a symposium on the long public debate between pro-choice and pro-life advocates.

Defendants claim that certain witnesses are required to fully put forth the Legislature's position as it represents the "will of the people." The Court will not pass on whether this claim is accurate where the Governor, the Attorney General, and a sizable minority of the Legislature all believe the Act to be unconstitutional. Nonetheless, the Court will permit presentation of evidence, but only for the purpose presently agreed to by the parties—to provide general medical background and technical explanation for the benefit of the Hearing Judge. The hearing and the presentation of testimony and exhibits will be narrowly focused, so as to simply aid the Court in determining the constitutionality of the Act.

Constitutionality turns on whether the Act, on its face, violates the current state of the law pursuant to *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). In *Casey*, the United States Supreme Court further defined its decision in *Roe v. Wade* and held that the Constitution placed limits on interfering with a person's most basic rights about family and parenthood as well as bodily integrity. *See Casey*, 505 U.S. at 851, 112 S.Ct. 2791. Specifically, the Court held that although a State has a legitimate interest from the outset of the pregnancy in protecting the health of the woman and the life of

the fetus, 505 U.S. at 869, 112 S.Ct. 2791, any law restricting or regulating abortions without explicit exceptions for pregnancies that endanger a woman's life or health is unconstitutional. *Id.* at 879–80, 112 S.Ct. 2791 (citing *Roe v. Wade*, 410 U.S. at 164–165, 93 S.Ct. 705). Thus, the Act is unconstitutional on its face if it does not provide exceptions for pregnancies that endanger a woman's life or health. If the Act is unconstitutional on its face, there is no legal justification to reach a consideration of the myriad of announced State interests that the Legislature seeks to introduce.

Although the Court will not permit considerations of all announced State interests, witnesses providing general medical background and technical explanation will be permitted at the hearing previously agreed to by the parties. Accordingly, Plaintiffs' application for leave to file a summary judgment motion is denied and the parties will proceed to a final hearing on the merits, pursuant to *FED.R.CIV. PRO.* 65(a)(2).

### B. Expert Testimony

The Federal Rules of Evidence provide that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*FED.R.EVID.* 702.

■ The "helpfulness of the expert testimony, *i.e.*, whether it 'will assist the trier of fact to understand the evidence or to determine a fact in issue,'" controls the rule. *United States v. Downing*, 753 F.2d 1224, 1235 (3rd Cir.1985) (quoting *FED.R.EVID.* 702). Rule 702 of the Federal Rules of Evidence liberally permits admission of expert testimony that has "some potential for assisting the trier or fact." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 780 (3rd Cir.1996) (citations omitted). In fact, the Federal Rules of Evidence strongly embody an undeniable preference for admitting evidence that may aid the trier of fact. *Id.*

■ There is no current challenge to expert testimony based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (requiring (1) the witness to be a qualified expert, (2) the expert's testimony to be of scientific, technical, or specialized knowledge, and (3) the testimony to assist the trier of fact). The proposed defense witnesses all pass the tests outlined in *Daubert*. The *Daubert* standards apply to determine if a witness is, in fact, an expert. The Court has been asked here to limit the number of witnesses. Applying *Daubert* to challenge expert testimony misapplies the standard of review for purposes of this application. The admissibility of expert testimony is not an issue of fact and is thus reviewable under the abuse of discretion standard. *See General Electric Co. v. Joiner*, 522 U.S. 136, ——, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997).

Defense counsel indicated that there may be *Daubert* challenges, but any such challenge necessarily awaits deposition of permitted witnesses. Counsel may address any such challenge at the August 24, 1998 final conference.

### C. Excluding Evidence–FED.R.EVID. 401/402/403

■ "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *FED.R.EVID.* 401. "Evidence which is not relevant is not admissible" pursuant to *FED.R.EVID.* 402. Moreover, the Court can exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *FED.R.EVID.* 403. The Court must "balance the probative value and the need for the evidence against the harm likely to result from its admission" when conducting a Rule 403 inquiry. *FED.R.EVID.* 403, Advisory Committee Note. The Court is vested with broad discretionary authority to determine the balancing issue presented by *FED.R.EVID.*

403. *See Garden v. General Electric Co.,* 1992 WL 184345 at *2 (D.N.J.1992). As such, the Court will consider the probative value of each individual expert's testimony and balance it with the provisions of Rule 403 in determining which witnesses to exclude.

### D. FED.R.EVID. 611(a)

■ A court can set time limits on a trial, and a limit of days is acceptable in complex cases. *See MCI Communications Corp. v. American Tel. & Tel. Co.,* 708 F.2d 1081, 1171–72 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983) (rejecting defendants' suggestion that a 26–day time limit in an antitrust case was too short and that the limit should have been computed in months, not days); *see also United States v. Hardage,* 750 F.Supp. 1460 (W.D.Okla. 1990), *aff'd in relevant part,* 982 F.2d 1436 (10th Cir.1992) (a complex environmental case where a time limit of days was imposed).

■ Federal Rule of Evidence 611(a) states that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth [and] (2) avoid needless consumption of time. . . ." It is fundamental that a court has the power and duty to manage its docket and the individual cases before it to "secure fairness in administration and elimination of unjustifiable expense and delay." *United States v. Hardage,* 750 F.Supp. at 1528 (W.D.Okla.1990), *aff'd in relevant part,* 982 F.2d 1436 (10th Cir.1992) (quoting *FED. R.EVID.* 102). In addition, "courts have the discretion to place reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* (citations omitted).

■ As such, a trial court has the ability and duty to control the volume of witnesses provided the trier of fact hears all facts necessary to form an educated decision. The trial court must allow or prohibit witnesses depending on evidence previously presented.

### E. FED.R.CIV.P. 1 AND 16

As court dockets grow, the proportionate amount of time available to entertain litigation necessarily decreases. Rule 1 of the Federal Rules of Civil Procedure provides that the Federal Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." *FED.R.CIV.P.* 1. As a result, a court has "great powers to control the preparation, processing and presentation of civil cases . . . and the command of *FED.R.CIV.P.* 1, that the rules be construed 'to secure the just, speedy, and inexpensive determination of every action' is the polestar and the standard." *United States v. R.J. Reynolds Tobacco Co.,* 416 F.Supp. 316, 322 (D.N.J.1976) (quoting *FED.R.CIV.P.* 1).

Rule 16 of the Federal Rules of Civil Procedure allows the Court to avoid "unnecessary proof" and "cumulative evidence," and place limitations and restrictions on the use of testimony under Rule 702 of the Federal Rules of Evidence. (*FED.R.CIV.P.* 16(c)(4)). In addition, Rule 16 permits a judge to "establish[ ] a reasonable limit on time allowed for presenting evidence; . . . and such other matters as may facilitate the just, speedy, and inexpensive disposition of the action." (*FED.R.CIV.P.* 16(c)(15) & (16)).

■ A trial judge can limit the number of expert witnesses pursuant to *FED.R.CIV.P.* 1 and 16. Both rules permit a Court to use its "great powers" to streamline a trial so long as each side presents all expert testimony and evidence necessary to assist the trier of fact. Cumulative witnesses are unnecessary if their only purpose serves to assist the trier of fact on a previously illustrated issue.

## IV. ANALYSIS

The Defense does not oppose presentation of the four witnesses specified by the Plaintiffs. Thus, the only remaining dispute concerns the number of witnesses to be permitted on behalf of the Defense at the hearing in September. The Plaintiffs oppose presentation of any and all witnesses specified by the Defense, except for the testimony of Dr. Boehm.

The Court analyzed each witness in light of Defendants' claimed subject matter exper-

tise. The Court also considered the particular disciplines and qualifications of Plaintiffs' witnesses. The Court's task is to determine which witnesses' testimony will sufficiently help the Hearing Judge determine the constitutionality of the Act.

Defense counsel conceded, at oral argument on July 13, 1998, that the purpose of the September hearing is to present medical background and technical evidence so that the Hearing Judge may properly determine the Act's constitutionality. Specifically, the Hearing Judge must decide whether the Act provides a medical exception for the health of the mother, which is necessary to comply with *Roe* and *Casey*. Therefore, witnesses offered to present general medical and technical evidence may testify.

 When a legislative act's constitutionality is challenged, the government should ordinarily be allowed to present evidence of its interests in prohibiting the subject conduct. *See 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (overturning a state statute prohibiting the advertisement of liquor prices, balancing State's interests in reducing alcohol consumption and protecting consumers from "commercial harms" against reducing liquor retailer's profits and regulating commercial speech); *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (overturning a state act that constituted a taking of private land without compensation to the landowner, balancing state interests in taking the land without compensation against a landowner's personal interests in the land).

Here, the Legislature seeks to offer a myriad of witnesses supporting its interests and how the interests of the State outweigh the interests of the Plaintiffs. However, if a challenged act is unconstitutional on its face, the Court need not reach such an elaborate balancing test and, thus, it would be inappropriate to consider the expansive, and unnecessary, evidence which the Legislature seeks to introduce.

 If the Act is unconstitutional on its face by not providing medical exceptions for expectant mothers pursuant to *Roe* and *Ca-*

*sey,* the Court need not engage in an elaborate balancing test between the Act's constitutionality and the "will of the people." There is no need or justification to hear the entirety of the Legislation's proffered witnesses simply because most of it would be superfluous. The Court will only permit those witnesses that will provide a sufficient basis for articulating the essential State interests in the Act's enforcement.

The testimony of witnesses with statistical, general medical, and technical explanation relevant to the Act's constitutionality will provide the Court with sufficient evidence to identify and consider the State's interests in the Act's enforcement. The Court will not permit witnesses offered to provide esoteric evidence relating to State interests, such as: DNA; an unborn child's ability to sense pain; an unborn child's gestational development; fetal surgery, fetal medicine and fetal intervention; pediatric neurology; post-abortion stress; personal observations of abortions, and other similar issues that are beyond the scope of this particular hearing.

For example, there exists no legal justification or need in this hearing for evidence depicting graphic reconstruction of the abortion process. Testimonial evidence explaining terms and procedures is all the evidence that the Court contemplates, or deems required, to determine whether the Act is unconstitutional on its face.

Thus, those witnesses who will offer medical opinions on abortions and the procedure described in the Act, and witnesses offered to explain, rebut, or testify about statistics concerning abortions are deemed necessary to assist the Hearing Judge in determining the Act's constitutionality. Witnesses offered to explain other issues are unnecessary to determine the Act's constitutionality.

Dr. Clowes, Dr. Boehm, Dr. Bowes, and Dr. Romer will be permitted to testify. All other Defense witnesses are unnecessary and will be excluded from testifying. The Hearing Judge may, of course, permit other witnesses should the dynamics of the hearing reasonably require it.

### 1. Brian Clowes, Ph.D.

Dr. Clowes' testimony will assist the Hearing Judge determine the Act's constitutionality. His testimony is offered to rebut any statistics that Plaintiffs may present. One or all of the witnesses offered by the Plaintiffs will present statistics about abortions and, thus, Defendants need a statistician to rebut Plaintiffs' assertions. Pursuant to Rule 401 of the Federal Rules of Evidence, Dr. Clowes' testimony is relevant and therefore admissible.

### 2. Frank H. Boehm, M.D.

At a status conference on June 14, 1998, the Plaintiffs agreed to Dr. Boehm as an expert witness for the Defendants. Dr. Boehm's testimony will assist the Hearing Judge determine the Act's constitutionality. He will give his medical opinion on the ethics of the abortion method described in the Act and whether the statute is unconstitutionally vague. Furthermore, Dr. Boehm will provide general background and technical explanations that may prove helpful to the Hearing Judge. Therefore, Dr. Boehm's testimony will be relevant and admissible.

### 3. Watson A. Bowes, Jr., M.D.

Dr. Bowes' testimony will assist the Hearing Judge determine the Act's constitutionality. His assertions complement those of Dr. Boehm. Dr. Bowes' testimony will include his medical opinion on whether the statute is unconstitutionally vague. The testimony of Dr. Bowes is of a general and technical medical nature and will assist the Hearing Judge in September.

### 4. Nancy G. Romer, M.D.

Dr. Romer's testimony will help the Hearing Judge determine the Act's constitutionality. Her testimony will be of a general and technical medical nature and will assist the Hearing Judge in September. Dr. Romer will offer her medical opinion of the Act and whether its language is unclear to her about the described abortion method.

### 5. Other Potential Witnesses

Defendants list other unnamed witnesses that may be called. The Court will not permit unknown witnesses to testify at the hearing. The District Judge is, of course, free to permit other witnesses if they are offered for appropriate rebuttal or impeachment testimony.

### 6. Dr. David Mark, Ph.D.

Dr. Mark's testimony will not help the Hearing Judge determine the Act's constitutionality. His expert testimony on the structure and properties of DNA, explanation of Substance P, and recent discoveries about human development during gestation are unnecessary to educate the District Judge about the Act's constitutionality. Dr. Mark's testimony allegedly supports certain State interests relating to issues the Hearing Judge will not decide. His testimony is irrelevant, would waste time, cause delay, and potentially confuse the issues. The testimony of Dr. Mark will be excluded pursuant to Rules 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure.

### 7. Dr. Marie A. Peeters–Ney, M.D.

The testimony of Dr. Peeters–Ney will not help the Hearing Judge determine the Act's constitutionality. She will testify to issues of State interest. Her testimony would repeat evidence about DNA and an unborn child's gestational development. Testimony on these subjects is unnecessary, irrelevant, and would cause delay, waste time, and potentially confuse the issues. Pursuant to Rules 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure, the testimony of Dr. Peeters–Ney will be excluded.

### 8. Dr. Ola D. Saugstad, M.D.

Dr. Saugstad will not help the Hearing Judge determine the Act's constitutionality. His testimony would describe an unborn child's ability to sense pain, the unborn child's gestational development, and issues of pediatric neurology. These are issues relating to alleged State interests. Dr. Saugstad's testimony would delay the trial, waste

time, and potentially confuse the issues. Dr. Saugstad's testimony will be excluded pursuant to Rules 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure.

### 9. Dr. Charles Langer, M.D., F.R.C.S.

Dr. Langer will not help the Hearing Judge determine the Act's constitutionality. Dr. Langer's testimony relates to an unborn child's ability to sense pain issues of fetal medicine, fetal surgery and fetal intervention. These issues relate to announced State interests, and thus will not aid the Hearing Judge in determining this particular claim of unconstitutionality. His testimony would cause delay, waste time, and potentially confuse the issues. Dr. Langer's testimony will be excluded pursuant to Rules 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure.

### 10. Gabriele deVerber, M.D., F.A.C.P.

Dr. deVerber's testimony will not assist the Hearing Judge determine the Act's constitutionality. Her testimony addresses the transmission of pain in an unborn child's body, the gestation of an unborn child, and issues of pediatric neurology. Her testimony relates to announced State interests. Dr. deVerber's testimony is unnecessary pursuant to Rules 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure, because it would waste time, cause unnecessary delay, and potentially confuse the issues.

### 11. Dr. Nicholas Fisk, Ph.D. F.R.A.C.O.G., F.R.C.O.G., C.M.F.M., D.D.V.

Dr. Fisk's testimony will not help the Hearing Judge determine the Act's constitutionality. He will testify to stress responses in unborn children and is an expert in fetal surgery, fetal medicine and fetal intervention procedures. Dr. Fisk's testimony relates to announced State interests. Pursuant to Rules 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure, Dr. Fisk's testimony will be excluded from the hearing.

### 12. Dr. Clayton Ward Kischer, Ph.D.

Dr. Clayton's testimony will not help the Hearing Judge determine the Act's constitutionality. He will testify to issues relating to announced State interests. His testimony on the development and gestation of the fetus will cause undue delay, waste time, and potentially confuse the issues. His testimony will not assist the District Judge determine the Act's constitutionality and will be excluded pursuant to Rules 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure.

### 13. Dr. Julian E. DeLia, M.D., M.B.A.

The testimony of Dr. DeLia is unnecessary to assist the Hearing Judge determine the Act's constitutionality. Dr. Fisk is an expert in fetal medicine, fetal surgery and fetal intervention and would testify about the gestation of an unborn child. Dr. DeLia's testimony pertains to announced State interests. Dr. DeLia's testimony would waste time, cause undue delay, and potentially confuse the issues. His testimony will be excluded pursuant to Rules 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure, as it will not assist the Hearing Judge determine the Act's constitutionality.

### 14. Dr. Vincent Rue, Ph.D.

The testimony of Dr. Rue will not help the Hearing Judge determine the Act's constitutionality. His opinion is on another announced State interest, the psychological effects of abortion. At issue is the constitutionality of the statute and Dr. Rue's testimony is irrelevant and unnecessary. Pursuant to Rule 402, 403 and 611 of the Federal Rules of Evidence, and Rules 1 and 16 of the Federal Rules of Civil Procedure Dr. Rue's testimony will be excluded.

### 15. Brenda Shaffer, R.N.

Nurse Shaffer's testimony will not assist the Hearing Judge determine the Act's constitutionality. She has observed abortions and assisted in their performance. Nurse Shaffer's testimony is unnecessary because it

will not address any aspect of the Act's constitutionality and would be cumulative. Nurse Shaffer's testimony would cause undue delay, waste time, and potentially confuse the issues. The Court will exclude Nurse Shaffer's testimony pursuant to Federal Rules of Evidence 402, 403 and 611, and Rules 1 and 16 of the Federal Rules of Civil Procedure.

## V. CONCLUSION

The Court will permit the hearing on Plaintiffs' application for a permanent injunction, long scheduled by the parties and the Hearing Judge, to go forward. Accordingly, Plaintiffs' application for leave to file a summary judgment motion is denied. The eight witnesses permitted to be deposed and to testify at the hearing will, in the Court's view, provide sufficient general medical and technical explanation sufficient to assist the Hearing Judge in properly evaluating the constitutionality of the Act. Accordingly, Defendants' application to permit testimony at the hearing is granted in part and denied in part.

The Court has attempted to fashion an opportunity for both sides to fairly present their respective cases. The four Defense witnesses, permitted by the Court, appear to complement and relate to the four Plaintiffs' witnesses. In addition, it is this Court's considered view that the four Defense witnesses permitted to testify will most efficiently and effectively assist the Hearing Judge on the particular issue to be decided. These particular witnesses will also be able to articulate the State's interests in the Act's enforcement. Finally, the overall goal of the Court is to devise a fair process that will bring closure—one way or the other—to this particular constitutional challenge in a "just, speedy and inexpensive" manner.

An appropriate Order accompanies this Memorandum Opinion.[1]

---

1. Defendant New Jersey Legislature now claims (for the first time and after discussing the issue for months) that the United States Magistrate Judge has no authority to enter the accompanying Order. *See* Defendant's New Jersey Legislature's Brief in Opposition [sic] to Certain Defendant's Experts, p. 15. This argument is meritless and the Court need not address it.