**PACTECH, INC., et al.**

v.

**AUTO–OWNERS INSURANCE CO., et al.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

June 16, 2008 Session.

Sept. 22, 2008.

Permission to Appeal Denied by Supreme Court April 27, 2009.

Dudley W. Taylor and Jonathan S. Taylor, Knoxville, Tennessee, for the appellant, PacTech, Inc.

Charles F. Sterchi III, Knoxville, Tennessee, for the appellee, Auto–Owners Insurance Company.

Johnny Von Dunaway, Lafollette, Tennessee, for the appellee, Arthur H. Black.

**OPINION**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Commercial equipment belonging to the insured was destroyed in a fire, and the insured sought to recover proceeds under its insurance policy, submitting a sworn statement in proof of loss to the insurer. A third party, holding a security interest in the destroyed property, also filed a claim with the insurer to recover for the loss of its collateral in the fire as loss payee, pursuant to a mortgage holders clause in the policy. Alleging that the fire was the result of arson by the insured and that the insured materially misrepresented information on the sworn statement with intent to deceive, the insurer denied coverage. The insurer also denied coverage of the lienholder's claim, asserting that the lienholder's right to recover was no greater than that of the insured. The insured filed suit against the insurer, seeking recovery under the policy and requesting damages for violation of the Tennessee Consumer Protection Act ("TCPA") and, in the alternative, for assessment of a bad faith penalty against the insured under state statutory law. The lienholder's motion for summary judgment was granted, and the lienholder was awarded recovery in the full amount of the debt owed by the insured. The insured's motion for directed verdict to recover under the policy and the insurer's motion for directed verdict as to the claim for bad faith penalty were both denied. A jury trial resulted in findings that the insurer had not violated the

TCPA and that the insured had not committed arson, but had materially misrepresented information on the sworn statement in proof of loss with the intent to deceive. The insured's motion to set aside the jury verdict was denied. On appeal, we vacate the trial court's summary judgment in favor of the lienholder upon the ground that the mortgage holders clause in the policy did not extend to coverage of personal property. We affirm the trial court's denial of the insured's motion for directed verdict and motion to set aside the jury verdict upon the ground that there was material evidence to support the jury's finding that the insured materially misrepresented information on the sworn statement in proof of loss with intent to deceive. We reverse the trial court's denial of the insurer's motion for directed verdict upon the ground that the insured failed to make a formal demand with respect to its claim of bad faith. Finally, we affirm the jury's verdict as to the insured's claim that the insurer violated the TCPA upon the ground that the insured failed to present evidence showing that it suffered an ascertainable loss as a consequence of alleged unfair and deceptive acts of the insurer.

## I. Background

PacTech, Inc. ("PacTech") was, at all times relevant to this case, a Tennessee corporation engaged in the business of buying and re-selling battery manufacturing and packaging equipment. Arthur H. Black had made various personal loans to PacTech, totaling $680,000, and this debt was secured by PacTech's battery manufacturing and packaging equipment.

On the evening of July 4, 2004, a fire occurred at the building on Norma Road in Huntsville, Tennessee, wherein PacTech housed battery manufacturing and packaging equipment. Prior to the fire, PacTech had been issued an insurance policy by Auto–Owners Insurance Company ("Auto–Owners"), which included coverage for commercial personal property damage to the limit of $1,600,000 for the period of June 1, 2004, through June 1, 2005. After the fire, PacTech sought to recover proceeds under the policy for equipment that was allegedly destroyed by the fire and, in accordance with policy requirements, submitted a sworn statement in proof of loss. This statement listed various items of equipment as having been destroyed, valued such equipment at $1,608,000, and set forth a claim of $1,599,000, which constituted the maximum amount recoverable under the policy after payment of a $1,000 deductible. Mr. Black also submitted a claim to Auto–Owners pursuant to a clause in the policy providing for payment for certain losses suffered by mortgage holders.

Alleging that the fire which destroyed PacTech's property was intentionally set, either by PacTech or by someone on Pac-Tech's behalf, and that PacTech had intentionally misrepresented material facts and circumstances in its sworn statement in proof of loss, Auto–Owners refused to pay PacTech's claim and maintained that the policy was void and did not provide coverage of the claimed loss. Auto–Owners also refused to pay Mr. Black's claim, asserting that his rights under the policy did not exceed those of PacTech.

Upon Auto–Owners' failure to pay, Pac-Tech filed a complaint for declaratory judgment and other relief in the Circuit Court for Scott County, requesting, inter alia, a declaration that "the Policy was in full force and effect on the occurrence of the loss and that the Equipment was fully insured under such Policy." The complaint also sought damages against Auto–Owners upon the allegation that Auto–Owners had engaged in unfair or deceptive

practices under the Tennessee Consumer Protection Act ("TCPA") and requested, as an alternative to recovery under the TCPA, that PacTech be assessed a bad faith penalty pursuant to Tenn.Code Ann. § 56–7–105. Mr. Black filed an intervening complaint in the suit, seeking a $680,000 judgment against Auto–Owners upon the assertion that he was owed such amount as loss payee under the policy as a result of his loan to PacTech.

Subsequently, the trial court granted a motion for summary judgment filed by Mr. Black and awarded him a judgment against Auto–Owners in the amount of $680,000 upon finding that the mortgage holders clause in the policy allowed Mr. Black, as a designated loss payee, to recover the full amount of the monies owed him by PacTech as a result of the loss of the collateral securing such debt, notwithstanding any acts by PacTech in contravention of the policy.

A jury trial was conducted as to remaining matters in dispute. At close of proof, Auto–Owners moved for a directed verdict in regard to PacTech's claim under the TCPA and PacTech's claim for assessment of a bad faith penalty, and PacTech moved for directed verdict as to whether its claimed loss was covered by the policy. Both motions were denied. Thereafter, the jury returned its verdict, finding that PacTech "did not cause or consent to the willful burning of the insured property," that PacTech did "make a material misrepresentation on the proof of loss with the intent to deceive," and that Auto–Owners did not "use one or more unfair or deceptive acts or practices that violated the [TCPA]." A motion by PacTech to set aside the jury verdict and, alternatively, for the granting of a new trial was denied, and this appeal by PacTech followed.

## II. Issues

We address the following issues:

1) Whether the trial court erred in denying PacTech's motion for directed verdict and motion to set aside the jury verdict because Auto–Owners failed to present sufficient evidence to show that PacTech made a material misrepresentation with intent to deceive.

2) Whether PacTech established a claim under the TCPA.

3) Whether the trial court erred in failing to grant Auto–Owners a directed verdict on the issue of whether a bad faith penalty should be assessed against Auto–Owners under Tenn.Code Ann. § 56–7–105.

4) Whether the trial court erred in granting Mr. Black's motion for summary judgment, allowing him to recover $680,000 from Auto–Owners under the mortgage holders clause in PacTech's policy.

## III. Analysis

### A. Standards of Review

The nature of the issues presented in this appeal dictate that we employ the following standards of review.

The proper standard of review with respect to PacTech's challenge of the trial court's denial of its motion for directed verdict and post-trial motion to set aside the jury verdict was addressed by this Court in *Kelley v. Johns,* 96 S.W.3d 189 (Tenn.Ct.App.2002). In that case, we noted that where a party contests the denial of such motions, it is sufficient that we solely consider whether there was sufficient evidence to support the jury's verdict, given that a directed verdict should not be granted if the evidence presented allows reasonable minds to reach more than one conclusion. *Id.* at 194. Noting

that Tenn. R.App. P. 13(d) provides that "[f]indings of fact by a jury in a civil action shall be set aside only if there is no material evidence to support the verdict," we further stated as follows:

Appellate courts employing this standard may not review the evidence de novo. Nor may they weigh the proof to determine where the preponderance of the evidence lies. Rather, appellate courts must (1) take the strongest legitimate view of the evidence that favors the verdict, (2) assume the truth of all evidence that supports the verdict, and (3) allow all reasonable inferences to sustain the verdict. If the record contains any material evidence to support the verdict, the judgment based upon the verdict must be affirmed.

*Kelley,* 96 S.W.3d at 194. With regard to the meaning of "material" in this context, we observed as follows:

The concept of materiality does not relate to the weight of evidence. Rather, it involves the relationship between the proposition that the evidence is offered to prove and the issues in the case.... Thus, Tenn. R. App. P. 13(d) requires the reviewing court to determine whether the record contains any evidence relating to the matters in issue which, when reviewed in a light most favorable to the prevailing party, supports the jury's verdict.

*Id.* at 194–95 (citations omitted).

Likewise, pursuant to Tenn. R. App. P. 13(d), we must affirm the jury's verdict in favor of Auto–Owners on the issue of whether it violated the TCPA if there is any material evidence in the record to support such verdict.

We review both the denial of Auto–Owners' motion for directed verdict with respect to whether it should have been assessed a bad faith penalty and the trial court's grant of Arthur Black's motion for summary judgment with respect to the mortgage holders clause under the standard applicable to a trial court's decision as to a motion for summary judgment. *See Cortez v. Alutech, Inc.,* 941 S.W.2d 891, 893 (Tenn.Ct.App.1996).

Summary judgments enable courts to conclude cases that can and should be resolved on dispositive legal issues. *See Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); *Airport Props. Ltd. v. Gulf Coast Dev., Inc.,* 900 S.W.2d 695, 697 (Tenn.Ct.App.1995). They are appropriate only when the facts material to the dispositive legal issues are undisputed. Accordingly, they should not be used to resolve factual disputes or to determine the factual inferences that should be drawn from the evidence when those inferences are in dispute. *See Bellamy v. Fed. Express Corp.,* 749 S.W.2d 31, 33 (Tenn.1988).

To be entitled to a summary judgment, the moving party must demonstrate that no genuine issues of material fact exist and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Byrd,* 847 S.W.2d at 210; *Planet Rock, Inc. v. Regis Ins. Co.,* 6 S.W.3d 484, 490 (Tenn.Ct.App.1999). A summary judgment should not be granted, however, when a genuine dispute exists with regard to any material fact. *Seavers v. Methodist Med. Ctr.,* 9 S.W.3d 86, 97 (Tenn.1999); *Hogins v. Ross,* 988 S.W.2d 685, 689 (Tenn.Ct.App.1998). Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Aghili v. Saadatnejadi,* 958 S.W.2d 784, 787 (Tenn.Ct.App.1997). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or

defense contained in the motion, *see Byrd*, 847 S.W.2d at 210; and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993). A party seeking a summary judgment must demonstrate the absence of any genuine and material factual issues. *Byrd*, 847 S.W.2d at 214.

When the party seeking summary judgment makes a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd* 847 S.W.2d at 215; *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). The non-moving party may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) provided by Rule 56.06 showing that there is a genuine issue for trial. If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party. Tenn. R. Civ. P. 56.06.

■ Summary judgments do not enjoy a presumption of correctness on appeal. *See Nelson v. Martin*, 958 S.W.2d 643, 646 (Tenn.1997); *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn.1997). Accordingly, when we review a summary judgment, we view all the evidence in the light most favorable to the non-movant, and we resolve all factual inferences in the non-movant's favor. *See Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn.1999); *Muhlheim v. Knox County Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn.1999). A summary judgment will be upheld only when the undisputed facts reasonably support one conclusion—that the moving party is entitled to a judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529

(Tenn.1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995).

### B. Material Misrepresentation With Intent to Deceive

■ The first issue we address is whether the trial court erred in failing to grant PacTech's motion for directed verdict and motion to set aside the jury verdict. As noted, we must affirm the trial court's denial of these motions if there is any material evidence in the record that supports the jury's verdict. Question number two of the verdict form that was returned by the jury in this case was "Did the plaintiff make a material misrepresentation on the proof of loss with intent to deceive?" The jury's response to this question was "yes." While the exact basis of the jury's conclusion that PacTech materially misrepresented information on the proof of loss form is not given, Auto–Owners argued at trial that, in completing the proof of loss form, Pac Tech listed and sought recovery for items which were not actually destroyed in the fire and listed inflated values for items for which it sought recovery. Thus, should we find any material evidence showing that Pac-Tech either listed items on the sworn statement in proof of loss that were not destroyed in the fire or knowingly overvalued items for which it sought recovery, we must affirm the trial court's decision. Our inquiry ends upon our finding of material evidence in either regard. After careful review, we find material evidence in support of the argument that PacTech falsely listed items on the sworn statement in proof of loss as having been destroyed in the fire.

Among the items claimed by PacTech and listed on the sworn statement in proof of loss as having been destroyed in the fire were two "Tray Loader Stackers" with a stated value of $50,000; and two "Polypro-

pylene Sealer Pouch Makers" with a stated value of $120,000. Auto–Owners' determination that the list submitted by PacTech contained items not destroyed in the fire was based, at least in part, upon the assessment of Auto–Owners' employee Dorothy Cornelius. In August of 2004, Ms. Cornelius was employed by Commercial Equipment Pricing and Sourcing, which she described as a company that works with insurance companies to obtain values for lost equipment. On August 8 and 9, 2004, as an employee of that company, Ms. Cornelius inspected the fire site for the purpose of identifying destroyed equipment. Some time later, Ms. Cornelius was hired by Auto–Owners, subsequently reviewed the sworn statement in proof of loss filed by PacTech, and determined that items listed on the statement were not evident in the fire debris at the time of her earlier inspection. Based upon field notes she made in August of 2004, Ms. Cornelius testified as follows that she was unable to confirm the presence of one of the two "Tray Loader Stackers" and the two "Polypropylene Sealer Pouch Makers":

A. We confirmed that one tray loader stacker was found in the debris.

Q. And the claim was for two different tray loader stackers, I understand.

A. Yes.

Q. Could you confirm the presence of a second tray loader stacker in the debris?

A. We did not confirm the presence of the second tray loader tracker in the debris.

\* \* \*

Q. What was the next item on the list, please?

A. Two polypropylene sealer pouch makers.

Q. And did you find those items in the debris?

A. We found no confirming evidence that these items were in the debris.

This testimony alone constitutes material evidence that items listed by PacTech on the sworn statement in proof of loss were not destroyed in the fire. PacTech asserts that Ms. Cornelius was inexperienced and did not know what she was looking for when she inspected the fire site in August of 2004 and that her testimony was "indecisive." Such assertions, even if true, pertain to the weight of the evidence, not its materiality, and are, therefore, irrelevant to our review. PacTech also asserts that in August of 2004, Ms. Cornelius could not have known what items were listed by PacTech on the sworn statement in proof of loss because she was not privy to such statement as of that time. However, it does not matter that Ms. Cornelius did not know in August of 2004 what items PacTech would subsequently list as destroyed because she was merely testifying as to what equipment remains were evident at the fire site based upon her investigation at the time, and her observations at that time were not dependent upon knowing what items PacTech listed on the sworn statement in proof of loss. Finally, PacTech observes that Auto–Owners admitted in its answer that PacTech's "loss was complete" and contends that, as a result of this admission, Auto–Owners is precluded from arguing that PacTech did not lose all of its insured personal property in the fire. The statement that PacTech's "loss was complete" merely concedes that all items that were in the building at the time of the fire were completely destroyed; it does not concede that all of the items listed by PacTech were actually among the items destroyed in the fire.

■ PacTech also argues that, in addition to presenting material evidence of material misrepresentation, Auto–Owners was required to present material evidence of

PacTech's intent to deceive. However, "[i]f a false statement is knowingly made by the insured with regard to a material matter, the intent to defraud will be inferred." *McConkey v. Cont. Ins. Co.,* 713 S.W.2d 901, 906 (Tenn.Ct.App.1984). The inference that PacTech intended to deceive Auto–Owners arose upon establishment of the fact that PacTech falsely listed items on the sworn statement in proof of loss that were not actually destroyed in the fire. In support of its argument that Auto–Owners was required to present evidence that PacTech intended to deceive Auto–Owners when it presented a false listing of destroyed property, PacTech cites *Wilder v. Tennessee Farmers Mut. Ins. Co.,* 912 S.W.2d 722 (Tenn.Ct.App. 1995). In *Wilder,* we reviewed a trial court's decision that an insurance company had failed to establish that the insured had intentionally misrepresented facts in the claims process. We affirmed such decision upon our determination that, while the record showed that many statements that the insured made to the insurer appeared to be false, the evidence did not preponderate in favor of a finding that the statements were made with the intent to deceive. However, *Wilder* is distinguished from the instant matter by the fact that in *Wilder,* we reviewed a decision reached after a bench trial, whereas we now review a jury decision. While the trial court in *Wilder* might have inferred from the false statements of the insured that they were made with the intent to deceive, it apparently concluded that the evidence did not support such inference, and we determined that the evidence did not preponderate against this conclusion. In the matter before us, as we have stated, we do not review the jury's decision by seeking to determine where the preponderance of the evidence lies. Instead our review is limited to determining whether there is any material evidence to support the jury's

verdict and in so doing, as we have noted, we must allow all reasonable inferences. As we have discussed, there was material evidence that PacTech falsified information in the claims process, and we must allow that the jury reasonably inferred that this falsification was done with the intent to deceive. If nothing more, the above cited statement from our decision in *McConkey* underlines the reasonableness of such an inference.

In summary, PacTech's contention that the trial court erred in failing to grant its motion for directed verdict and motion to set aside the jury verdict are without merit.

### C. TCPA

■ Next, PacTech argues that, contrary to the jury's verdict, it established that Auto–Owners violated the TCPA.

Question number 3 of the verdict form stated "Did the defendant use one or more unfair or deceptive acts or practices that violated the Tennessee Consumer Protection Act?" The jury's response to this question was "No." The TCPA, codified at Tenn.Code Ann. § 47–18–101 *et seq.,* provides in pertinent part as follows:

> [a]ny person who suffers *an ascertainable loss* of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn.Code Ann. § 47–18–109(a)(1) (emphasis added). While PacTech alleges various actions/omissions by Auto–Owners that PacTech contends constituted unfair and deceptive practices under the TCPA, PacTech references no evidence presented

at trial showing that it suffered "an ascertainable loss" as a consequence of any of these alleged actions/omissions, and our independent review of the record reveals no such evidence. For this reason alone, the jury could have reasonably concluded that there was no violation of the TCPA, and therefore, we find no error in its verdict in favor of Auto–Owners on the issue.

## D. Bad Faith Penalty

■ Alleging the same acts/omissions upon which it argued that Auto–Owners violated the TCPA, along with Auto–Owners' failure to pay PacTech's loss within 60 days after demand was made, PacTech argues in the alternative that Auto–Owners' should be assessed a bad faith penalty pursuant to Tenn.Code Ann. § 56–7–105, which provides in pertinent part, as follows:

> The insurance companies of this state, and foreign insurance companies ... doing an insurance business ... in this state, in all cases when a loss occurs and they refuse to pay the loss within (60) sixty days after a demand has been made by the holder of the policy or ... on which the loss occurred, shall be liable to pay the holder of the policy ..., in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy ...; and provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn.Code Ann. § 56–7–105. Auto–Owners contends that PacTech's claim under this statute should have been dismissed by the trial court upon Auto–Owners' motion for directed verdict. We agree.

In *Ginn v. American Heritage Life Insurance Co.*, 173 S.W.3d 433 (Tenn.Ct.App. 2004), we noted that a formal demand for payment by the insured is a prerequisite to recovery under the statute:

> In order to recover bad faith penalties under [Tenn.Code Ann. § 56–7–105], a plaintiff must prove (1) the policy of insurance must, by its terms, have become due and payable, (2) *a formal demand for payment must have been made,* (3) the insured must wait 60 days after making his demand before filing suit unless there is a refusal to pay prior to the expiration of the 60 days, (4) the refusal to pay must not have been in good faith.

*Id.* at 443 (citation omitted) (emphasis added). In an earlier opinion, *Walker v. Tenn. Farmers Mut. Ins. Co.*, 568 S.W.2d 103, 106 (Tenn.Ct.App.1977), observing the penal nature of the statute and the necessity that it be strictly construed, we further noted that, even though an insured has completed all forms required by the insurer, this is insufficient to meet the requirement of the statute that formal demand be made, and we concluded that such requirement shows that the insurer is "entitled to notice of the claim for bad faith and a period in which to reflect upon the consequences of its failure to pay." *Id.* at 106. There being no evidence that PacTech at any time made formal demand for payment such as would have apprised Auto–Owners of PacTech's bad faith claim, we believe Auto–Owners' motion for directed verdict at the close of proof was well taken and should have been granted.

### E. Mortgage Holders Clause

█ Next, we address the issue raised by Auto–Owners as to whether the trial court erred in granting the summary judgment motion of intervening plaintiff Arthur H. Black, allowing Mr. Black to recover as sole loss payee under the mortgage holders clause in PacTech's policy.

The two types of insurance policy loss payable clauses recognized under the laws of this state have been distinguished by the Tennessee Supreme Court as follows:

> There are essentially two types of loss payable clauses in which a loss payee's interest in property is protected should a loss occur: "standard/union" or "simple/open." Under a simple/open clause, the loss payee's rights are no greater than those of the insured. *See Hocking v. Virginia Fire and Marine Ins. Co.*, 99 Tenn. 729, 42 S.W. 451 (1897); *see also Central Nat'l Ins. Co. v. Manufacturers Acceptance Corp.*, 544 S.W.2d 362, 364 (Tenn.1976).
>
> \* \* \*
>
> The standard/union clause is the second type of loss payable clause. The essential nature and function of the standard/union clause is "to furnish to the mortgagee a reliable security in a definite sum free from any interference on the part of the mortgagor which would to any extent, invalidate or make less adequate that security." *Laurenzi v. Atlas Ins. Co.*, 131 Tenn. 644, 176 S.W. 1022, 1026 (1915). To accomplish this purpose, specific language is included in the loss payee clause to prevent the policy from being invalidated by the insured's acts or neglect.

*Reeves v. Granite State Ins. Co.*, 36 S.W.3d 58, 60–61 (Tenn.2001). Although Auto–Owners concedes that the mortgage holders clause is a union/standard clause, Auto–Owners argues that, by its language,

the clause does not apply to personal property such as that securing PacTech's debt to Mr. Black. In its order granting Mr. Black summary judgment, the trial court acknowledged Auto–Owner's argument and set forth its decision as follows:

> Defendant concedes that the language appearing on page 10 and 11 of the policy is a standard/union mortgage clause but asserts the language only applies to real estate and not commercial/personal property, thus relegating Arthur Black to coverage as an open/simple mortgagee. Auto–Owners asserts that under the open/simple mortgage clause, Arthur Black can only recover if the insured recovers. Arthur Black asserts that the policy has [a] standard/union clause; and he may recover regardless of whether or not the insured recovers.
>
> The Court finds the policy issued by Auto–Owners Insurance Company was issued for the sole purpose of covering commercial/personal property; that Arthur H. Black, III, as a designated loss payee, relied upon the policy and certificate of insurance which designated him as a loss payee covering commercial machinery against loss; that the language in the policy creates a standard/union mortgage clause; and that Auto–Owners Insurance Company cannot deny payment to the loss payee on the basis that the insured is not entitled to recover any amount under the policy.

We are obliged to review the trial court's summary judgment guided by the previously noted standards. Restating in brief, under such standards, we view all the evidence in the light most favorable to the non-movant, resolving all factual inferences in the non-movant's favor, and we will uphold the summary judgment only if the undisputed facts reasonably support

one conclusion—that the moving party is entitled to a judgment as a matter of law.

In *National Insurance Association v. Simpson,* 155 S.W.3d 134, 138 (Tenn.Ct. App.2004), we reiterated the principles guiding our interpretation of an insurance policy, including provisions in the policy related to scope of coverage, as follows:

> The courts interpret insurance policies using the principles that guide the construction of other contracts. The principal goal is to ascertain and to enforce the intent of the contracting parties. The parties' intent, and therefore the meaning of the contract, should be derived from the provisions in the insurance policy itself.
>
> Insurance policies should be construed as a whole in a reasonable and logical manner. Their terms should be given their natural and ordinary meaning. When the terms of an insurance policy are clear, the courts must avoid favoring one party or the other, and must avoid construing the policy in a way that would extend or restrict the intended scope of coverage.

> \* \* \*

> Questions relating to the interpretation of written contracts involve legal rather than factual issues. Insurance policies are contracts, and thus scope of coverage issues present questions of law.... [W]hen the relevant facts are not in dispute, the legal issues regarding a policy's coverage may be resolved by summary judgment.

The mortgage holders clause in Pac-Tech's policy with Auto–Owners provides in full as follows:

**2. Mortgage Holders**

 **a.** The term "mortgage holder" includes trustee.

 **b.** We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

 **c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

 **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

 **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

 **(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

 **(3)** Has notified us of any change in ownership or property or substantial change in risk known to the mortgage holder.

 All of the terms of this Coverage Part will then apply directly to the mortgage holder.

 **e.** If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

 **(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

 **(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

 At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note

will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation *if we cancel for your nonpayment of premium;* or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

While it is undisputed that the PacTech's policy provided for coverage for commercial property, including machinery and equipment, the mortgage holder's clause limited Mr. Black's rights to recovery for loss of real property only. Subsection (b) of the clause clearly states that Auto–Owners "will pay for covered loss of or damage to *buildings or structures* to each mortgage holder shown in the Declarations in their order of preference, as interests may appear." Further, subsection (c) of the clause states that "the mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on *the building or structure*." There is no language in the clause that makes it applicable in the event of loss or damage to personal property.

In support of the trial court's ruling, Mr. Black directs our attention to that portion of the policy designated "Coverage," which states in pertinent part as follows:

Covered property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a. Building**, meaning the building or structure described in the Declarations, including

(1) Completed additions;

(2) Permanently installed:

(a) Fixtures;

(b) Machinery; and

(c) Equipment;

Mr. Black argues that the above definition of "building" to include permanently attached machinery and equipment "could certainly be construed to include large scale industrial equipment associated with battery manufacturing." We find no merit in this argument, given the absence of any proof that the items securing Mr. Black's debt were permanently installed.

As we have noted on prior occasion, "[i]n the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and unjust." *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708 (Tenn.Ct.App.1992). The terms of the mortgage holders policy are clear, and we must construe them in a way that does not extend their ordinary meaning. Based upon a reasonable and logical construction of such terms, and our review of the policy as a whole, we do not agree that the mortgage holders clause extended to coverage of the personal property that secured PacTech's debt to Mr. Black, and accordingly, it is our determination that Mr. Black was not entitled to summary judgment as a matter of law in this case.

### IV. Conclusion

We acknowledge that issues other than those specifically addressed were raised in this appeal; however, it is our determination that all such additional issues are pretermitted by our decision herein. For the reasons stated in this opinion, the trial court's judgment denying PacTech's mo-

tions for directed verdict and to set aside the jury verdict is affirmed; the trial court's summary judgment in favor of Arthur H. Black is vacated; the trial courts denial of Auto–Owner's motion for directed verdict on the issue of the assessment of a bad faith penalty is reversed; and the verdict of the jury is affirmed in all respects. Costs of appeal are assessed to PacTech and Arthur H. Black, equally.